

March 6, 2006

**VIA FACSIMILE AND POSTAL SERVICE**

James N. Barkeley
Assitant United States Attorney
Federal Building U.S. Courthouse
222 W. 7th Ave. #9, Rm 253
Anchorage, AK 99513-7567

    Re:    United States v. Security Aviation
               3:06-CR-00022 JWS

Dear Jim:

    This will attempt to summarize our "meet and confer" session on Friday, March 3, 2006, regarding discovery in the above case attended by you, FBI and IRS agents, Paul Stockler and me. We also take this opportunity to specify additional discovery requests. We are writing jointly in an effort save time.

    1.    <u>Document Scanning</u>. You advised that USAO staff are in the process of scanning the many documents seized under the authority of the numerous search warrants served in this matter. You advised that the order of scanning priority is: first, the documents relating to the ongoing business activities of the offices searched; and second, documents relevant to the charges contained in the present indictment. You advised that the scanning of the documents in the first category would take 7 days, but that the remaining documents would require 8 weeks to scan. Both Paul and I thought that was excessive and asked that an alternative method of making discovery be considered. In particular, we asked that we be allowed to review the seized items and mark those documents we wish copied, so we might have them available to prepare for the March 24, 2006 motions date and the May 3, 2006 trial date.

    2.    <u>Electronic Evidence</u>. You advised that you were informed that it will take 8 months to mirror the hard drives on the seized computers, but that you were going to request that the process be greatly accelerated. We await your advise on how soon we will have access to the electronic data seized. We can see no reason that the process cannot be accelerated to provide us access with 10 days. As I am sure you know, a good deal of evidence relevant to our defense is present in the electronic records seized, particularly on the computers seized from Security Aviation and from the Robert Kane residence.

    3.    <u>Inspection of L-39 Aircraft and Rocket Pods</u>. We renew our request to inspect and photograph the L-39 aircraft and rocket pods seized by the government. We wish to have our clients inspect the aircraft and pods on Friday, March 10, 2006. We understand the aircraft

DORSEY & WHITNEY LLP • WWW.DORSEY.COM • T 907.276.4557 • F 907.276.4152
1031 WEST FOURTH AVENUE • SUITE 600 • ANCHORAGE, ALASKA 99501-5907
USA CANADA EUROPE ASIA

Exhibit   A
Page  1  of  3



James N. Barkeley
March 6, 2006
Page 2

are currently stored in the FAA hanger at the Anchorage International Airport and the pods are stored at the FBI offices. We will be photographing and/or videotaping our inspection. We wish to remove certain panels granting access to the portion of the aircraft designed to house the weapon armament and control systems. We will provide you with the precise panels we wish to remove before the inspection.

We will want the following persons present from Security Aviation: Mark Avery; Joe Griffith; a Security Aviation mechanic; and Robert Bundy. I understand that Robert Kane also wishes to be present with his attorneys Paul Stockler and Kevin Fitzgerald and, of course, his third party custodian. We will also have a photographer and videographer present.

Of course, if we retain an expert on issues related to whether the aircraft and pods are components of a destructive device or could be used to transport a destructive devise, that expert wil also need to inspect the aircraft and pods at a later time.

4. <u>Aircraft Logs</u>. If the aircraft log books are not kept with the aircraft we ask that, no later than our inspection of the aircraft and pods, we be given access to all aircraft log books and accompanying documentation and certifications, including any certifications referring to modifications or alterations rendering the aircraft systems inoperative.

5. <u>Expert reports</u>. We reiterate our request that we be provided a written or recorded summary of any opinion rendered to the government by a BATF agent or any other person with expertise on the issue of whether the rocket pods seized by the government are destructive devises as charged by the government. The government relied on the opinions of experts in the hearings to date and in the applications for search warrants and Kane's arrest warrant. We can conceive of no reason for a delay in providing us with the experts report, particularly given the rapidly approaching motions and trial dates. We expect the report will detail the expert's opinions, the exact bases and reasons for the expert opinions (including the detailed protocols of the tests and experiments the expert has performed on the aircraft and/or pods) and the expert's qualifications. Additionally, in order to allow us to understand the opinions, we will need copies of all photographs and videos taken by the government of the experts activities involving the aircraft and/or pods. We will also need copies of any photographs or videos taken of the aircraft and pods at the time of the seizures.

We understand you have already requested the expert to expedite his report. We will need the expert's report and photographs to facilitate our inspection of the aircraft and pods in order to determine what, if any, alterations have been made to the aircraft and pods by the government in moving and testing those items.

6. <u>Discovery required under Brady v Maryland, U.S. v Bagley, Giglio v U.S. and Progeny</u>. We demand production at the earliest opportunity of all material in the government's possession and control favorable to Security Aviation and material to guilt or innocence or punishment. This includes, but is not limited to: 1) physical and documentary evidence bearing on the history and status of the subject aircraft and pods (such as may be present in the files of

Exhibit ___A___
Page _2_ of _3_



James N. Barkeley
March 6, 2006
Page 3

the BATF, FAA or other government agency; 2) all documents received from or observed in the possession of any other person (such as from Allen Smith or Joseph Lamonaca, including the printout of the email from someone at Patterson Air Force Base regarding demilitarization of rocket pods); 3) all impeachment information concerning the witnesses to be called by the government (such as statements, memorialized or not, that are inconsistent with each other or the witness's expected testimony in any way, records of convictions, arrests, and police contacts, prior false statements by the witness in this or other investigation, information on the witness's capacity to perceive or remember, any record of alcohol or substance abuse, any record of mental and emotional problems); 4) any information concerning motive, bias or interest of a potential witness (for example, any express or implied promise of favorable treatment by the government in an actual or potential administrative, civil or criminal proceeding, the witness's fear of adverse consequences in any potential civil, criminal or administrative proceeding, the witness's like or dislike of Rob Kane or Security Aviation or any of its agents or employees for any reason, including actual or potential employment actions).

The existence of the indictment in this case has caused and continues to cause severe financial and emotional hardship to Security Aviation and its many employees. We are intent on getting this to trial as soon as possible. Accordingly we seek the good faith cooperation of the government in providing us the discovery to which we are entitled at the earliest opportunity.

DORSEY & WHITNEY LLP
Attorneys for Security Aviation\

Sincerely,

*[signature]*

Robert C. Bundy

PAUL D. STOCKLER
Attorney for Robert Kane

*[signature]*

Paul Stockler

Exhibit  A
Page 3 of 3

DORSEY & WHITNEY LLP