DEBORAH M. SMITH
Acting United States Attorney

STEVEN E. SKROCKI
JAMES N. BARKELEY
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: steven.skrocki@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:06-cr-022-JWS |
| | ) | |
| Plaintiff, | ) | **MOTION OF THE** |
| | ) | **UNITED STATES TO** |
| vs. | ) | **CONTINUE TRIAL** |
| | ) | **DUE TO COMPLEXITY** |
| ROBERT F. KANE, | ) | **CAUSED BY CLASSIFIED** |
| a/k/a "COMMANDER KANE," and | ) | **INFORMATION** |
| SECURITY AVIATION, INC., | ) | |
| | ) | |
| Defendants. | ) | **Filed On Shortened Time** |
| | ) | |
| | ) | **FILED UNDER SEAL** |

The United States moves under seal and on shortened time[1] pursuant to 18 U.S.C. § 3161(h)(8)(A) to continue the trial in the above captioned case presently set for May 3, 2006. The motion for a trial continuance is based on good cause and is premised on the government's obligation to review and produce classified information now in the possession of the intelligence community concerning defendant Robert F. Kane (Kane) pursuant to the strict requirements of the Classified Information Procedures Act (CIPA).

Defendant Security Aviation, Inc. (Security Aviation) has requested that the government search for and produce classified information concerning defendant Kane. The undersigned has been informed by other government agencies within the intelligence community that such classified information exists and has so informed both defendants. Defendant Kane, through counsel, then requested access to the classified information. Accordingly, the government is now legally and ethically required to review the classified information for potential *Brady*[2] material and other discoverable material.

---

[1] The instant motion is filed on shortened time due to the pendency of the trial date and in light of the government's ongoing efforts to review classified information pursuant to the Classified Information Procedures Act.

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

The government's review and potential production of the classified information to the defendants, in whatever form, will necessarily involve complicated and time consuming procedures and safeguards mandated by CIPA that will impact the government, the court, and the defendants and ultimately the trial schedule in this case. These matters fall squarely within the ambit of excludable delay under the Speedy Trial Act, 18 U.S.C. § 3161(h)(8)(A) and the motion for a trial continuance until September 2006 should be granted both in the interests of justice and to conserve judicial resources.

I. **THE CONFIRMED EXISTENCE OF CLASSIFIED INFORMATION IN THE POSSESSION OF THE INTELLIGENCE COMMUNITY REQUIRES REVIEW OF THE INFORMATION BY THE PROSECUTION**

   A. **The Confirmed Existence of Classified Information.**

In correspondence dated March 10, 2006, counsel for defendant Security Aviation requested that the government produce all information relating to defendant Kane's activities with all government agencies including but not limited to the FBI, CIA and NSA. See Exhibit A attached hereto. Prior to Security Aviation's request, the government also independently requested information from the intelligence community relevant to this case that might be in the possession of various government agencies inside and outside the Department of Justice. The

undersigned has since been officially notified by one or more intelligence agencies that such classified information exists. Requests with other agencies remain outstanding. On Saturday, March 18, 2006, the undersigned informed defense counsel for both defendants in writing that classified information exists regarding defendant Kane and that such information is held by at least two intelligence community agencies. On Monday, March 21, 2005 Kevin Fitzgerald, counsel for defendant Robert Kane, was also orally advised of the existence of this classified information concerning his client. At that time, Mr. Fitzgerald indicated that he wanted access to the information as part of the discovery process.

### B.     Classified Information Procedures Act, 18 U.S.C.A. App. III.

The review and potential disclosure of classified information to criminal defendants, and the government's use of classified information in a prosecution, is controlled by the Title 18 U.S.C.A., App. III, the Classified Information Procedures Act (CIPA). Unsurprisingly, the procedures imposed by CIPA are necessarily strict and time consuming. Moreover, in order for government counsel to even access this information, counsel must—and already has—consulted with the Counter Espionage Section (CES) of the United States Department of Justice. In this regard, CES will assist and is assisting the undersigned in producing the request to the intelligence agency(ies) for production of information and/or

materials for review by the undersigned Assistant U.S. Attorney. Per Department of Justice policy under the United States Attorney's Manual, classified information that is or may be relevant to a criminal prosecution cannot be utilized, even for discovery purposes, without coordinating with the agency that is responsible for classifying or declassifying the information.

Once the review by government counsel has occurred, the government is obligated to determine what information is discoverable to the defense under the government's *Brady* obligations (see *Brady* discussion below), or what information the government wishes to use in its case-in-chief during trial. The following outline is provided to the court with regard to the procedures that the government and the court must follow under CIPA, which, to the government's knowledge, have never been utilized in the District of Alaska:

> **1.        Definitions of Terms Under CIPA.**

As noted above, CIPA pertains to classified information. Section 1 of CIPA defines "classified information" and "national security," both of which are terms used throughout the statute. Subsection (a), in pertinent part, defines "classified information" as:

> [A]ny information or material that has been determined by
> the United States Government pursuant to an Executive

order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security.

Subsection (b) defines "national security" to mean the "national defense and foreign relations of the United States."

### 2. The Pretrial Conference

After the initial screening of the information by government counsel, and the determination as to whether any of the information is discoverable, Section 2 of CIPA provides for the holding of a pretrial conference by the court to establish, inter alia, the procedures governing the release and use of the classified information. Section 2 provides:

> that '[a]t any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution.'

Following such a motion, the district court:

> shall promptly hold a pretrial conference to establish the timing of requests for discovery, the provision of notice required by Section 5 of this Act, and the initiation of the procedure established by Section 6 (to determine the use, relevance, or admissibility of classified information) of this Act.

### 3. Protective Orders

In the event there exists any likelihood that classified information may be at issue in a case the government must move the court to enter a protective order. CIPA Section 3 requires the court, upon the request of the government, to issue an order "to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case." In this regard, the protective order must be detailed to ensure that access to classified information is restricted to cleared persons and to provide for adequate procedures and facilities for proper handling and protection of classified information during the pre-trial litigation and trial of the case as well as the appointment of a Court Security Officer (CSO). It will also implement the requirement of defense counsel to obtain security clearances to have access to classified information. The CSO is an employee of the Department's Justice Management Division; however, the court's appointment of a CSO makes that person an officer of the court. In that capacity, the CSO is responsible for assisting both parties and the court staff in obtaining security clearances (not required for the judge); in the proper handling and storage of classified information, and in operating the special communication equipment that must be used in dealing with classified information. The requirement of security clearances does not extend to the judge or to defendants.

**4.    Discovery of Classified Information by Defendants**

CIPA Section 4 provides in pertinent part that "[t]he court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting the relevant facts that classified information would tend to prove."  Like Rule 16(d)(1) of the Federal Rules of Criminal Procedure, CIPA section 4 provides that the government may demonstrate that the use of such alternatives is warranted in an *in camera*, *ex parte* submission to the court.  By the time of the section 4 proceeding, the prosecutor's review of any classified material and identification of any material that is arguably subject to the government's discovery obligation will have occurred.

**5.    Notice and Pretrial Evidentiary Rulings-Notice and Intent to Use Classified Information**

Following the discovery process under section 4, there are three pretrial steps in the handling of classified information under sections 5 and 6 of CIPA. First, the defendant must specify in detail, in a written notice, the precise classified information he reasonably expects to disclose.  Second, the court, upon a motion

from the government, shall hold a hearing pursuant to section 6(a) to determine the use, relevance and admissibility of the proposed evidence. Third, following the 6(a) hearing and formal findings of admissibility by the court, the government may move to substitute redacted versions of classified documents from the originals or to prepare an admission of certain relevant facts or summaries for classified information that the court has ruled admissible.

## II. THE GOVERNMENT'S KNOWLEDGE OF CLASSIFIED INFORMATION CONCERNING DEFENDANT KANE MANDATES REVIEW OF THE INFORMATION IN THE POSSESSION OF THE INTELLIGENCE COMMUNITY FOR *BRADY* MATERIAL AND OTHER DISCOVERABLE MATERIAL.

### A. *Brady* Mandates a Review of the Classified Information Concerning Defendant Kane Known to Exist in the Intelligence Community Files

Here, defendant Security Aviation has made a specific demand for discovery of all information concerning defendant Kane in the files of the FBI, CIA and NSA, among other agencies. The government has determined that such information exists and that the information is classified. Counsel for Kane has requested the opportunity to review this classified information. Until the information is reviewed and disclosed, there is no way to predict exactly what is in the agency files, what exculpatory evidence may exist, what defenses might

become evident, and what any defense witnesses, including the defendant, might state with regard to this classified information.

In *Brady*, the Supreme Court held that a prosecutor's suppression "...of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.  Here, the undersigned is legally required and ethically bound to search the classified information concerning defendant Kane, now known to exist, for discoverable material, particularly exculpatory material.  Indeed, the government's search for *Brady* material must extend to sources that are readily available to the government and that, because of the known facts and nature of the case, should be searched as a function of fairness to the defendant.  *United States v. Perdomo*, 929 F.2d 967, 970-71 (3rd Cir. 1991); *United States v. Auten*, 632 F.2d 478, 481 (5th Cir. 1980); *United States v. Burnside*, 824 F. Supp. 1215 (N.D. Ill. 1993).  Such is directly the situation before this court.  Given the background of defendant Robert Kane, as well as known facts and the nature of the case, a search of this information is, without question legally and ethically compelled.

The government is required to conduct a search if the defendant has made an explicit request that certain files be searched and there is a non-trivial prospect

that the examination of those files will yield material exculpatory information. *United States v. Brooks*, 966 F.2d 1500, 1504 (D.C. Cir 1992). In this case, some material has been found, so the court's analysis need go no further and the review of the material must be conducted. In this case, the government has received positive "hits" from agencies of the intelligence community and has requested, per the defense request for discovery, information from additional agencies. The government is awaiting word from those members of the intelligence community as to the existence of additional information for review. The government believes, as evidenced by its own independent effort to secure the same information, that the classified material at issue is relevant to the case at hand.

### III. ADDITIONAL CONCERNS UNDER CIPA

As part of its continuing investigation the government has been in contact with the United States Air Force. Through its investigation, the government has learned that an expert exists with specific qualifications and experience with the rocket pod launchers in question. This expert is willing to examine the rocket pods to determine whether the pods have been de-militarized or are operational. The expert, who resides outside the state of Alaska, is under United States Air Force authority. The undersigned learned on March 21, 2006 that special permission must be made through the Department of Justice to the United States Air Force

before any examination of the pods can take place. It is not known at present how much time is necessary to acquire the clearance/permission for this individual to examine the pods but the procedures have been placed into motion.

The import of this witness to the trial in the case is two-fold as the examination would either result in the discovery of exculpatory material under *Brady* if the pods were incomplete, de-militarized or non-operative, (assisting the defense) or, it would provide Rule 16 discovery in the event the pods were found to be operational. As to this witness, government counsel has been informed by his superiors that some aspects of his expert qualifications remain classified which will also trigger an examination under CIPA. This will require the government, at a minimum, to submit to the court *in camera* the expert's curriculum vitae in order to sanitize it and to sanitize his operational experience.

**IV. THE INTERESTS OF JUSTICE EXCEPTION OF THE SPEEDY TRIAL ACT UNDER 18 USC 3161(h)(8)(A) REQUIRES A CONTINUATION OF THE TRIAL DATE.**

Title 18 United States Code Section 3161(h)(8)(A) states in relevant part that:

> (A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his

        findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweighs the best interests of the public and the defendant in a speedy trial.

  (B)  The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:

    (i)  Whether the failure to grant such a continuance in the proceeding would be likely to make a ***continuation of such proceeding impossible, or result in a miscarriage of justice***.

    (ii)  ***Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.***

    (iii)  Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because

> the facts upon which the grand jury must base its determination are unusual or complex.
>
> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(8)(A).

As indicated above, the application of the Classified Information Procedures Act is being utilized for the first time in this District. Application of CIPA alone to the information which the government now knows exists creates a *de facto* complex case. The Act requires significant and complex pretrial action on behalf of the government, the defendant and the court in dealing with classified material. Additionally, the information at issue will almost certainly require defense counsel to obtain security clearances in order to receive the information as well as the appointment of a special Court Security Officer. Moreover, the classified information at issue is not yet in possession of the prosecution team and will require the undersigned to travel to several locations outside the District to review the information. As of this writing, government counsel is actively seeking to review the classified information as soon as possible. It is the understanding of

government counsel that the classified information is in the possession of at least two other non-intelligence agencies and must be collected and reviewed for discovery.

Additionally, the issue surrounding the rocket pods are unique. Unlike machine guns, there exist few individuals with the expertise to examine them for either demilitarization or operational capability. Moreover, the defense counsel are asserting in the media that the pods were and are "de-milled" or de-militarized, an issue with which the government strongly disagrees. Unlike a medical expert, firearms expert, or other type of expert more common in litigation, the government here has located an expert with special qualifications and by virtue of those qualifications requires special procedures to appear which also invoke CIPA. These factors provide the court, along with the other issues in this case sufficient basis under the interests of justice exception to the Speedy Trial Act to continue the case.

The government recognizes that a continuance of the trial in this case for the time requested will almost certainly raise the issue of deadlines concerning pretrial motions and the defendant's status on bail. Accordingly, the government is not opposed to a continuance issued by the court for the filing of pretrial motions. The government is also cognizant that defendant Kane remains under conditions of

pretrial release. Accordingly, the government will entertain reasonable modifications of the defendant's restrictions. The government will work with counsel for defendant Kane and the probation officer in an attempt to arrive at a package of conditions acceptable to both parties.

Accordingly, based on the foregoing, the government requests a continuance until September 2006 to allow the government to conduct a *Brady* review of the classified material at issue and to allow the government to comply with the strict requirements of CIPA. Simply ignoring the existence of the classified information now known to exist is not an option. The defendants requested that the government search for the information. The government now knows the information exists. The government is now simply legally and ethically obligated to review the information to determine whether any *Brady* material or other discoverable material exists within the body of classified information. This

process will necessarily be time consuming and is ongoing. Proceeding without such a review is not in the interests of justice and could easily waste judicial resources. Presumably, if the defendants were convicted at trial without benefit of the classified information at issue, the lack of such a review would certainly emerge as an issue on appeal.

## V.    CONCLUSION

In this matter, the facts of this case impose an affirmative obligation on the government to seek access to the classified information it now knows to exist as a result of a specific discovery request made by defendant Security Aviation. Additionally, given the undersigned's knowledge of the case and defendant Kane's background, prudence dictates under Brady and a prosecutor's affirmative discovery obligation to the defendant, that, at a minimum, a search of the files be conducted. The timetable and procedure for such a review, however, is out of the hands of the prosecution team assigned to this case and a time for review has not yet been established. The application of CIPA to this case creates a *de facto* case of complexity requiring an extensive continuance. Accordingly, the government

respectfully requests that the court continue the trial in this matter until September 2006. The government will be filing a separate request for a hearing on the present motion to continue.

   RESPECTFULLY SUBMITTED this 24<u>th</u>  day of March, 2006 at Anchorage, Alaska

            DEBORAH M. SMITH
            Acting United States Attorney

            s/ Steven. E. Skrocki
            Assistant U.S. Attorney
            222 West 7th Ave., #9, Rm. 253
            Anchorage, AK 99513-7567
            Phone: (907) 271-3380
            Fax: (907) 271-1500
            E-mail: steven.skrocki@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2006
a copy of the foregoing was served
fax on Robert Bundy,
Allen Clendaniel, Kevin Fitzgerald,
& Paul Sockler.

s/ Steven E. Skrocki