# SECURITY AVIATION, INC.
# RECORDS SYSTEM POLICY
# AND
# EMPLOYEE NON-DISCLOSURE AGREEMENT

I.) <u>Parties to this agreement</u>:

    1) Security Aviation, Inc., and

    2) _____ - employee

II.) <u>Purpose</u>

The performance of work at Security Aviation, Inc. (SAI) involves confidential information. SAI is entering a new phase of development which requires even more strict application of confidentiality rules and even more stringent records control procedures. All current and future SAI employees shall abide by the confidentiality requirements as stated in this document and as updated or clarified in other SAI policy statements, whether verbal or written.

Compliance with the Security Aviation, Inc. security policies, records policy, and confidentiality policy is a condition of employment. Failure to comply with these policies shall subject the employee to discipline or termination. Failure to comply with the policies may result in SAI taking legal action against the employee.

In the performance of the work assigned by Security Aviation, Inc., the employee shall agree to comply with, and assumes responsibility for compliance by employee's friends and family members, SAI's security and confidentially requirements. This means that the employee cannot share in any manner confidential information with anyone. The employee should not assume that disclosing confidential information to friends or family is "OK."

All SAI personnel shall be bound by this non-disclosure agreement and shall obey the highest level of confidentiality rules. These confidentiality obligations apply to staff and supervisors, alike; however, certain members of management have discretion to modify the rules on a case by case basis. Dissemination of information will be tightly controlled and subject to review. The non-disclosure and confidentiality requirements are mandatory employment requirements. Any employee who does not wish to agree to the non-disclosure and confidentiality requirements should bring this matter to the attention of a supervisor, and not sign this agreement.

Information security and records security are controlled by the records policy and the confidentiality policy. The two policies are closely aligned and are intended for the same purpose; that purpose is to preserve the confidentiality of all information relating to the

Initials _____
Revised 12/07/05

1

Exhibit C
Page 1 of 13

operations of SAI and SAI's clients. The security and confidentiality system under which the employee will be required to operate is similar to that in a well run law office observing the "lawyer-client confidentiality" or in a government agency that handles "classified" information.

The record system described below is a modified version of the basic federal records system. The records system described below is intended to meet the requirements of agencies related to SAI work (current and future) and shall be applied as necessary. The record system requirements described below are intentionally adopted by SAI and worded in a manner that provides SAI with the flexibility to integrate into the record systems of various other agencies for which SAI may perform work. Any publishing requirements are the responsibility of top management and are performed on a contract by contract basis. By understanding the records system described below, the SAI employee will understand the records system requirements of partner agencies. The maintenance of records and the non-disclosure of records and agency activities are governed by a large body of law and carries severe penalties for records disclosure, information disclosure, and breach of the records policy. This non-disclosure agreement and records system policy shall be amended from time to time in order to stay in compliance with partner agencies.

This document is a contract between SAI and the employee specifically for the purpose of reaching an understanding of the employee's information security, confidentiality, and records security obligations to SAI and SAI's clients. This agreement does not change the employment relationship between the parties. The employee is still an "at will" employee. In addition to the employment relationship currently in existence between SAI and the employee, SAI is requiring the employee to agree to obey and follow the records and confidentiality policies of SAI. If the employee does not choose to enter into this agreement, then the employee can no longer be employed by SAI. If the employee chooses to enter into this agreement, and then breaches the agreement, then SAI will have a contractual right to pursue the employee for breach of contract and any other legal remedies available to SAI.

If the employee does not understand the scope of this agreement and the employee's obligations under this agreement, the employee should not execute this document. Administrative procedures are in place to address an employee who chooses not to enter into this agreement. The employee is required to initial each page of this document to acknowledge that the employee has read each page and agrees to be bound by each and every provision of this agreement.

III.)   <u>Definitions</u>.

For purposes of this agreement --
   (1) the term "agency" means agency as defined in 5 USC section 552[(f)](e); SAI is a non-federal agency, but shall be considered an "agency" for the purposes of the records system described below
   (2) the term "individual" means a citizen of the United States or an alien lawfully admitted for permanent residence;
   (3) the term "maintain" includes maintain, collect, use, or disseminate;
   (4) the term "record" means any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial

Initials _____
Revised 12/07/05

2

Exhibit C
Page 2 of 13

transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph;

(5) the term "system of records" means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual;

(6) the term "statistical record" means a record in a system of records maintained for statistical research or reporting purposes only and not used in whole or in part in making any determination about an identifiable individual, except as provided by section 8 of USC title 13;

(7) the term "routine use" means, with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected; and

(8) the term "matching program"--

(A) means any computerized comparison of--

(i) two or more automated systems of records or a system of records with non-Federal records for the purpose of--

(I) establishing or verifying the eligibility of, or continuing compliance with statutory and regulatory requirements by, applicants for, recipients or beneficiaries of, participants in, or providers of services with respect to, cash or in-kind assistance or payments under Federal benefit programs, or

(II) recouping payments or delinquent debts under such Federal benefit programs, or

(ii) two or more automated Federal personnel or payroll systems of records or a system of Federal personnel or payroll records with non-Federal records,

(B) but does not include--

(i) matches performed to produce aggregate statistical data without any personal identifiers;

(ii) matches performed to support any research or statistical project, the specific data of which may not be used to make decisions concerning the rights, benefits, or privileges of specific individuals;

(iii) matches performed, by an agency (or component thereof) which performs as its principal function any activity pertaining to the enforcement of criminal laws, subsequent to the initiation of a specific criminal or civil law enforcement investigation of a named person or persons for the purpose of gathering evidence against such person or persons;

(iv) matches of tax information (I) pursuant to section 6103(d) of the Internal Revenue Code of 1986 [26 USCS § 6103(d)], (II) for purposes of tax administration as defined in section 6103(b)(4) of such Code [26 USCS § 6103(b)(4)], (III) for the purpose of intercepting a tax refund due an individual under authority granted by section 404(e), 464, or 1137 of the Social Security Act [42 USCS § 604(e), 664, or 1337]; or (IV) for the purpose of intercepting a tax refund due an individual under any other tax refund intercept program authorized by statute which has been determined by the Director of the Office of Management and Budget to contain verification, notice, and hearing requirements that are substantially similar to the procedures in section 1137 of the Social Security Act [42 USCS § 1320b-7];

(v) matches--

(I) using records predominantly relating to Federal personnel, that are performed for routine administrative purposes (subject to guidance provided by the Director of the Office of Management and Budget pursuant to subsection (v)); or

(II) conducted by an agency using only records from systems of records maintained by that agency;

Initials _____
Revised 12/07/05

3

Exhibit C
Page 3 of 13

if the purpose of the match is not to take any adverse financial, personnel, disciplinary, or other adverse action against Federal personnel;

(vi) matches performed for foreign counterintelligence purposes or to produce background checks for security clearances of Federal personnel or Federal contractor personnel;

(vii) matches performed incident to a levy described in section 6103(k)(8) of the Internal Revenue Code of 1986 [26 USCS § 6103(k)(8)]; or

(viii) matches performed pursuant to section 202(x)(3) or 1611(e)(1) of the Social Security Act (42 U.S.C. 402(x)(3), 1382(e)(1));

(9) the term "recipient agency" means any agency, or contractor thereof, receiving records contained in a system of records from a source agency for use in a matching program;

(10) the term "non-Federal agency" means any State or local government, or agency thereof, which receives records contained in a system of records from a source agency for use in a matching program;

(11) the term "source agency" means any agency which discloses records contained in a system of records to be used in a matching program, or any State or local government, or agency thereof, which discloses records to be used in a matching program;

(12) the term "Federal benefit program" means any program administered or funded by the Federal Government, or by any agent or State on behalf of the Federal Government, providing cash or in-kind assistance in the form of payments, grants, loans, or loan guarantees to individuals; and

(13) the term "Federal personnel" means officers and employees of the Government of the United States, members of the uniformed services (including members of the Reserve Components), individuals entitled to receive immediate or deferred retirement benefits under any retirement program of the Government of the United States (including survivor benefits).

IV) <u>Conditions of disclosure of records.</u>

Any disclosure of records shall be performed by management through designated procedures. Those members of management who are authorized to disseminate each category of information will be identified in a separate document. If you are not sure if disclosure is authorized, "ASK, DON'T ASSUME." Neither SAI nor any employee of SAI shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be--

(1) to those officers and employees of SAI who have a need for the record in the performance of their duties;

(2) required under 5 USC section 552 of this title;

(3) for a routine use as defined in subsection (I)(7);

(4) to the Bureau of the Census for purposes of planning or carrying out a census or survey or related activity pursuant to the provisions of title 13;

(5) to a recipient who has provided SAI with advance adequate written assurance that the record will be used solely as a statistical research or reporting record, and the record is to be transferred in a form that is not individually identifiable;

(6) to the National Archives and Records Administration as a record which has sufficient historical or other value to warrant its continued preservation by the United States Government, or for evaluation by the Archivist of the United States or the designee of the Archivist to

determine whether the record has such value;

(7) to another agency or to an instrumentality of any governmental jurisdiction within or under the control of the United States for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought;

(8) to a person pursuant to a showing of compelling circumstances affecting the health or safety of an individual if upon such disclosure notification is transmitted to the last known address of such individual;

(9) to either House of Congress, or, to the extent of matter within its jurisdiction, any committee or subcommittee thereof, any joint committee of Congress or subcommittee of any such joint committee;

(10) to the Comptroller General, or any of his authorized representatives, in the course of the performance of the duties of the General Accounting Office [Government Accountability Office];

(11) pursuant to the order of a court of competent jurisdiction; or

(12) to a consumer reporting agency in accordance with section 3711(e) of title 31.

V) <u>Accounting of certain disclosures of records</u>.

SAI and each employee of SAI, with respect to each system of records under its control, shall--

(1) except for disclosures made under subsections (IV)(1) or (IV)(2) above, keep an accurate accounting of--

(A) the date, nature, and purpose of each disclosure of a record to any person or to another agency made under subsection (b) of this section; and

(B) the name and address of the person or agency to whom the disclosure is made;

(2) retain the accounting made under paragraph (1) of this subsection for at least five years or the life of the record, whichever is longer, after the disclosure for which the accounting is made;

(3) except for disclosures made under subsection (IV)(7) above, make the accounting made under paragraph (1) of this subsection available to the individual named in the record at his request; and

(4) inform any person or other agency about any correction or notation of dispute made by SAI in accordance with subsection (d) of this section of any record that has been disclosed to the person or agency if an accounting of the disclosure was made.

VI) <u>Access to records</u>.

SAI and each employee of SAI (under the supervision of management) that maintains a system of records shall--

(1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him, except that the agency may require the individual to furnish a written statement authorizing discussion of that individual's record in the accompanying person's presence, except that some information is classified in a manner such that it is not accessible to him without legal action;

(2) permit the individual to request amendment of a record pertaining to him and--
  (A) not later than 10 days (excluding Saturdays, Sundays, and legal public holidays) after the date of receipt of such request, acknowledge in writing such receipt; and
  (B) promptly, either--
    (i) make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete; or
    (ii) inform the individual of its refusal to amend the record in accordance with his request, the reason for the refusal, the procedures established by the agency for the individual to request a review of that refusal by the head of SAI or an officer designated by the head of SAI, and the name and business address of that official;
(3) permit the individual who disagrees with the refusal of SAI to amend his record to request a review of such refusal, and not later than 30 days (excluding Saturdays, Sundays, and legal public holidays) from the date on which the individual requests such review, complete such review and make a final determination unless, for good cause shown, the head of SAI extends such 30-day period; and if, after his review, the reviewing official also refuses to amend the record in accordance with the request, permit the individual to file with SAI a concise statement setting forth the reasons for his disagreement with the refusal of SAI, and notify the individual of the provisions for judicial review of the reviewing official's determination under 5 USC Section 552 subsection (g)(1)(A);
(4) in any disclosure, containing information about which the individual has filed a statement of disagreement, occurring after the filing of the statement under paragraph (3) of this subsection, clearly note any portion of the record which is disputed and provide copies of the statement and, if SAI deems it appropriate, copies of a concise statement of the reasons of SAI for not making the amendments requested, to persons or other agencies to whom the disputed record has been disclosed; and
(5) nothing in this section shall allow an individual access to any information compiled in reasonable anticipation of a civil or criminal action or proceeding.

VII) <u>Agency requirements for records systems</u>.

SAI and each employee of SAI that maintains a system of records shall--
  (1) maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of SAI required to be accomplished by statute, contract, court order, or by executive order of the President;
  (2) collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs;
  (3) inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual--
    (A) the authority (whether granted by statute, or by executive order of the President) which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary;
    (B) the principal purpose or purposes for which the information is intended to be used;
    (C) the routine uses which may be made of the information, as published pursuant to paragraph (4)(D) of this subsection; and
    (D) the effects on him, if any, of not providing all or any party of the requested information;

Initials _____
Revised 12/07/05

6

Exhibit C
Page 6 of 13

(4) maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination;

(5) prior to disseminating any record about an individual to any person other than an agency, unless the dissemination is made pursuant to subsection (b)(2) of this section, make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes;

(6) maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity;

(7) make reasonable efforts to serve notice on an individual when any record on such individual is made available to any person under compulsory legal process when such process becomes a matter of public record;

(8) establish rules of conduct for persons involved in the design, development, operation, or maintenance of any system of records, or in maintaining any record, and instruct each such person with respect to such rules and the requirements of this section, including any other rules and procedures adopted pursuant to this section and the penalties for noncompliance;

(9) establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained.

VIII)   <u>Agency rules regarding information and records.</u>

In order to carry out the provisions of this section, SAI shall promulgate rules, in accordance with the requirements (including general notice) of 5 USC section 553, which shall--

(1) establish procedures whereby an individual can be notified in response to his request if any system of records named by the individual contains a record pertaining to him;

(2) define reasonable times, places, and requirements for identifying an individual who requests his record or information pertaining to him before SAI shall make the record or information available to the individual;

(3) establish procedures for the disclosure to an individual upon his request of his record or information pertaining to him, including special procedure, if deemed necessary, for the disclosure to an individual of medical records, including psychological records, pertaining to him;

(4) establish procedures for reviewing a request from an individual concerning the amendment of any record or information pertaining to the individual, for making a determination on the request, for an appeal within SAI of an initial adverse agency determination, and for whatever additional means may be necessary for each individual to be able to exercise fully his rights under this section; and

(5) establish fees to be charged, if any, to any individual for making copies of his record, excluding the cost of any search for and review of the record.

Each SAI employee will have agency rules added as addenda to their "Records System Policy and Non-Disclosure Agreement" after review and acknowledgment and signing.

Initials _____
Revised 12/07/05

7

Exhibit C
Page 7 of 13

IX) <u>Potential criminal penalties for violations</u>.

  (1) Any officer or employee of SAI, who by virtue of his employment or official position, has possession of, or access to, SAI records which contain individually identifiable information the disclosure of which is prohibited by this section or by rules or regulations established there under, and who knowing that disclosure of the specific material is so prohibited, willfully discloses the material in any manner to any person or agency not entitled to receive it, could be found guilty of a misdemeanor and fined not more than $ 5,000.
  (2) Any officer or employee of SAI who willfully maintains a system of records without meeting the notice requirements of subsection (VII)(4) above could be found guilty of a misdemeanor and fined not more than $ 5,000.
  (3) Any person who knowingly and willfully requests or obtains any record concerning an individual from an agency under false pretenses could be found guilty of a misdemeanor and fined not more than $ 5,000.

X) <u>General exemptions regarding records</u>.

The head of SAI may promulgate rules, in accordance with the requirements (including general notice) of 5 USC sections 553(b)(1), (2), and (3), (c), and (e), to exempt any system of records within the agency from any part of this section except subsections (IV), (V)(1) and (2), (VII)(4)(A) through (F), (VII)(6), (7), (9), (10), and (11), and (IX), above, if the system of records is related to records--
  (1) maintained by the Central Intelligence Agency; or
  (2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

At the time rules are adopted under this subsection, the agency shall include in the statement required under 5 USC section 553(c), the reasons why the system of records is to be exempted from a provision of this section.

SAI records may come within this exception, from time to time, and SAI staff will be notified of exempt procedures on an as needed basis. Violation of confidentiality rules or records rules while operating under an exemption shall be grounds for summary termination and potential criminal action.

Initials _____
Revised 12/07/05

8

Exhibit C
Page 8 of 13

XI) <u>Specific exemptions regarding records</u>.

The head of any agency may promulgate rules, in accordance with the requirements (including general notice) of 5 USC sections 553(b)(1), (2), and (3), (c), and (e), to exempt any system of records within the agency from 5 USC section 552 subsections (V)(3), (VI), (VII)(1), (VII)(4)(G), (H), and (I) and (VIII) if the system of records is--

(1) subject to provisions of 5 USC section 552(b)(1);

(2) investigatory material compiled for law enforcement purposes, other than material within the scope of subsection (j)(2) of 5 USC section 552: Provided, however, that if any individual is denied any right, privilege, or benefit that he would otherwise be entitled by Federal law, or for which he would otherwise be eligible, as a result of the maintenance of such material, such material shall be provided to such individual, except to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence;

(3) maintained in connection with providing protective services to the President of the United States or other individuals pursuant to section 3056 of title 18;

(4) required by statute to be maintained and used solely as statistical records;

(5) investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment, military service, Federal contracts, or access to classified information, but only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence;

(6) testing or examination material used solely to determine individual qualifications for appointment or promotion in the Federal service the disclosure of which would compromise the objectivity or fairness of the testing or examination process; or

(7) evaluation material used to determine potential for promotion in the armed services, but only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence.

At the time rules are adopted under this subsection, SAI shall include in the statement required under 5 USC section 553(c), the reasons why the system of records is to be exempted from a provision of this section.

SAI records may come within this special exception, from time to time, and SAI staff will be notified of exempt procedures on an as needed basis. Violation of confidentiality rules or records rules while operating under a special exemption shall be grounds for summary termination and potential criminal action.

XII) <u>Contractors</u>.

(1) When SAI provides by a contract for the operation by or on behalf of SAI of a system of

Initials _____
Revised 12/07/05

9

Exhibit C
Page 9 of 13

records to accomplish an SAI function, SAI shall, consistent with its authority, cause the requirements of this records system to be applied to such contracted system. For purposes of subsection (VII) above any such contractor and any employee of such contractor, if such contract is agreed to on or after the effective date of this records system, shall be considered to be an employee of SAI.
  (2) A consumer reporting agency to which a record is disclosed under section 3711(e) of title 31 shall not be considered a contractor for the purposes of this section.

XIII)   Mailing lists.

An individual's name and address may not be sold or rented by SAI unless such action is specifically authorized by law. This provision shall not be construed to require the withholding of names and addresses otherwise permitted to be made public.

XIV)   Verification and opportunity to contest findings.

  (1) In order to protect any individual whose records are used in a matching program, no recipient agency, non-Federal agency, or source agency may suspend, terminate, reduce, or make a final denial of any financial assistance or payment under a Federal benefit program to such individual, or take other adverse action against such individual, as a result of information produced by such matching program, until--
    (A) (i) the agency has independently verified the information; or
      (ii) the Date Integrity Board of the agency, or in the case of a non-Federal agency the Data Integrity Board of the source agency, determines in accordance with guidance issued by the Director of the Office of Management and Budget that--
        (I) the information is limited to identification and amount of benefits paid by the source agency under a Federal benefit program; and
        (II) there is a high degree of confidence that the information provided to the recipient agency is accurate;
    (B) the individual receives a notice from the agency containing a statement of its findings and informing the individual of the opportunity to contest such findings; and
    (C) (i) the expiration of any time period established for the program by statute or regulation for the individual to respond to that notice; or
      (ii) in the case of a program for which no such period is established, the end of the 30-day period beginning on the date on which notice under subparagraph (B) is mailed or otherwise provided to the individual.
  (2) Independent verification referred to in paragraph (1) requires investigation and confirmation of specific information relating to an individual that is used as a basis for an adverse action against the individual, including where applicable investigation and confirmation of--
    (A) the amount of any asset or income involved;
    (B) whether such individual actually has or had access to such asset or income for such individual's own use; and
    (C) the period or periods when the individual actually had such asset or income.
  (3) Notwithstanding paragraph (1), an agency may take any appropriate action otherwise prohibited by such paragraph if the agency determines that the public health or public safety may

Initials _____
Revised 12/07/05

10

Exhibit C
Page 10 of 13

be adversely affected or significantly threatened during any notice period required by such paragraph.

XV)    Matching Programs.

(1) Notwithstanding any other provision of law, no source agency may disclose any record which is contained in a system of records to a recipient agency or non-Federal agency for a matching program if such source agency has reason to believe that the requirements of subsection (p), or any matching agreement entered into pursuant to subsection (o), or both, are not being met by such recipient agency.
   (2) No source agency may renew a matching agreement unless--
       (A) the recipient agency or non-Federal agency has certified that it has complied with the provisions of that agreement; and
       (B) the source agency has no reason to believe that the certification is inaccurate.

XVI)    Security of internal SAI records, work product, and information.

The records of SAI shall be maintained in accordance with SAI policy and any statutory records system requirement then in effect, as described above or modified by written addendum to this records policy. The SAI and statutorily required records and confidentiality policies may be modified from time to time to comply with internal security and third party contract requirements.

Recording of information through any medium shall only occur in accordance with authorized procedures. No employee may record any information, on any media, on the premises of SAI, on the grounds surrounding SAI premises, or on the premises of SAI clients or contractors. Effective December 7, 2005, audio and video recording shall only occur after specific authorization and for an authorized purpose. Any SAI records or audio or video recordings, on any media, created prior to December 7, 2005 on SAI premises or created during a time in any way related to SAI business shall immediately be identified to or turned over to the SAI records supervisor, and shall not be removed from SAI premises without authorization.

Any non-public information that is observed in any format by the employee shall be used only for the purpose of performing his/her work. Information contained in such material or observations shall be treated as "Highly Sensitive - For Internal Use Only" and shall not be divulged or made known in any manner to any person except as may be authorized by management as necessary to perform the work. Disclosure to anyone other than an officer or employee of SAI shall require written approval of SAI management. Requests to make such disclosures should be addressed to the President of SAI.

Each officer or employee of SAI, to whom non-public SAI information may be made available or disclosed, shall not divulge that non-public information to any one, including any friend, family member, co-worker, or stranger, by any means, for a purpose or to an extent unauthorized herein. Unauthorized information disclosure may subject the offender to criminal and civil penalties.

Initials _____
Revised 12/07/05

11

Exhibit C
Page 11 of 13

For the purposes of this clause, "non-public information" means information in the possession of SAI that would qualify for exemption from disclosure under the Freedom of Information Act, including, but not limited to, "Official Use Only" information and records protected by the Privacy Act, 5 U.S.C. 552(a), and information that would qualify for protection under the lawyer-client privilege, and <u>any</u> information regarding the business practices, business or financial status of SAI, the clients of SAI, and any information regarding the building floor plan(s) of SAI, the security equipment, and any security protocols of SAI.

By signing this agreement, the employee agrees to comply with the records procedures and confidentiality conditions set forth herein and shall immediately notify SAI in the event that SAI Highly Sensitive - For Internal Use Only information is released or is required to be released. The non-disclosure requirements are a continuing obligation that shall remain in effect after an employee leaves the employ of SAI. At the time of release of employment, should that occur, the employee will be provided with specific guidelines regarding after employment non-disclosure requirements.

Employee Printed Name:
_____

Employee Signature:
_____

Date Signed: _____


Authorizing SAI Representative's Printed Name:
_____

Authorizing SAI Representative's Signature:
_____

Date Signed: _____

Initials _____
Revised 12/07/05

12

Exhibit C
Page 12 of 13

SECURITY AVIATION, INC.
RECORDS SYSTEM POLICY AND
EMPLOYEE NON-DISCLOSURE AGREEMENT

Agency Rule Memo #1
Effective date: 12/08/05

I. SAI management personnel authorized to make records and information management and disclosure decisions:

   a. Joe Kapper, President. Joe Kapper will be identified as the "head" of the agency/SAI and the records system manager.

   b. Commander Robert F. Kane

   c. Mark J. Avery

II. The records and information about the following clients and/or associated agencies of SAI are covered by the records system and confidentiality policies of SAI. The clients of the entities named below are also covered by the policies.

   a. Any agency or entity of the United States Department of Defense.

   b. Any entity identified as a Department of Defense civilian contractor, e.g., General Dynamics.

   c. Any agency or entity of the United States Department of Justice.

   d. Any agency or entity of the United States Department of Homeland Security.

   e. Any agency or entity of the United States National Security Council.

   f. Any agency or entity of the United States National Security Agency.

   g. Avery & Associates.

   h. Regional Protective Services, LLC.

   i. Medical Training Institute, Inc.

   j. Regional Paramedic Services, LLC.

III. The names of any SAI passengers or any companies using SAI services shall not be disclosed without express written permission of the passenger or company/client.

IV. All SAI medevac flights are covered by the confidentiality requirements of both the Health Insurance Portability and Accountability Act (HIPAA, aka., "HIPPA") and the SAI policies. (See attached HIPAA summary.)

Acknowledgement of Receipt and Agreement to Rule:
Employee Printed Name:

_____

Employee Signature:

_____

Date Signed: _____

Exhibit C
Page 13 of 13