Robert C. Bundy, ABA #7206021
Allen F. Clendaniel, ABA #0411084
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Suite 600
Anchorage, AK 99501-5907
Telephone:   (907) 276-4557
Facsimile:    (907) 276-4152

Attorneys for SECURITY AVIATION, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>ROBERT F. KANE, a/k/a "COMMANDER KANE," and SECURITY AVIATION, INC.,<br><br>        Defendants. | Case No. 3:06-CR-00022-JWS-JDR-2<br><br>**MOTION TO SUPPRESS EVIDENCE AND REQUEST FOR A FRANKS HEARING** |

Defendant Security Aviation, Inc. ("Security Aviation") moves to suppress all evidence seized pursuant to search warrants 3:06-mj-00008-JDR, 3:06-mj-00009-JDR, 3:06-mj-00010-JDR, 3:06-mj-00016-JDR, 3:06-mj-00017-JDR, and 3:06-mj-00018-JDR, because the affidavit supporting the search warrants contained material false statements or omissions made intentionally or with reckless disregard for the truth. Accordingly, a hearing must be held and the evidence suppressed. *Franks v. Delaware,* 438 U.S. 152 (1978).

## I.     Facts

On February 1, 2006, Matthew Campe, Special Agent for the Federal Bureau of Investigation, filed applications and affidavits for three search warrants. The applications were sought to search the Security Aviation aircraft hangar at the Palmer Airport in Palmer, Alaska, the Security Aviation hangar with a physical address of 6121 South Airpark Place, Anchorage, Alaska, and the building at 3230 "C" Street, which houses offices of Security Aviation, Inc. The search warrant for the building at 3230 "C" Street was issued at 5:38 p.m. The search warrant for the Palmer Security Aviation hangar was issued at 6:07 p.m. The third search warrant for the Anchorage Security Aviation hangar was issued at 6:12 p.m.

These three search warrants were served at each location on February 2, 2006 and the government seized a tremendous amount of property at each location, including physical objects, documents, records, and computers and computer drives.

On February 2, Russel Peras, Senior Special Agent of the Immigration and Customs Enforcement, then filed another application and affidavit for a search warrant for the Palmer Hangar to permitting seizure of additional items and permitting the search of additional locations. Peras' affidavit was based only on the execution of the search warrant for the Palmer hangar and attached Campe's original affidavit. The search warrant was issued at 4:41 p.m. on February 2, 2006. Campe also filed additional applications and affidavits for search warrants for the South Airpark hangar and the building at 3230 "C" Street on February 3, 2006. The applications sought authorization to search additional locations and seize additional materials. The search warrant for the South Airpark hangar was issued at 8:15 p.m. on February 3, 2006. The search warrant

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MOTION TO SUPPRESS EVIDENCE AND                                   UNITED STATES OF AMERICA V.
REQUEST FOR A FRANKS HEARING                              ROBERT F. KANE and SECURITY AVIATION
Page 2 of 16                                                                                  Case No 3:06-CR-00022-JWS-JDR-2

for the C Street building was issued at 8:23 p.m. on February 3, 2006. These additional warrants were executed and the government seized additional property pursuant to this second round of warrants.

## II.  Legal Standard

A *Franks* hearing is required when a defendant makes a showing that the affidavit in support of a search warrant contains material misrepresentations or omissions. In the seminal case of *Franks v. Delaware,* the U.S. Supreme Court outlined the following criteria:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

438 U.S. at 171-72.

This standard applies to omissions as well as affirmative misrepresentations. *United States v. Stanert*, 762 F.2d 775, 780-81 (holding that a defendant is "permitted to challenge a warrant affidavit valid on its face when it contains deliberate or reckless omissions of facts that tend to mislead").

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MOTION TO SUPPRESS EVIDENCE AND
REQUEST FOR A FRANKS HEARING
Page 3 of 16

UNITED STATES OF AMERICA V.
ROBERT F. KANE and SECURITY AVIATION
Case No 3:06-CR-00022-JWS-JDR-2

Campe's affidavit supporting all of the search warrants contains numerous material misrepresentations and omissions.[1]  Indeed, Campe admits in paragraph 5 of his affidavit, "Not all facts known to me are contained with this affidavit.  Only those facts I believe relevant to the Court's probable cause determination are included."  There are several critical misrepresentations and omissions material to probable cause that require a *Franks* hearing and the suppression of evidence.

The criminal activity alleged in Campe's affidavit is contained in paragraph 3.  The following pertinent violations are alleged:

- 26 U.S.C. § 5861(d) & (k) – Possession and Importation of an Unregistered Destructive Device

- 18 U.S.C. § 371 – Conspiracy to Possess an Unregistered Destructive Device

- 18 U.S.C. § 922(l) – Unlawful Importation of a Firearm

- 18 U.S.C. § 371 - Conspiracy to Unlawfully Import a Firearm

- 18 U.S.C. 1349 - Conspiracy to Commit Bank fraud

- 18 U.S.C. § 1344(1) & (2) - Bank fraud

- 18 U.S.C. § 371 - Conspiracy to Make False Statements to a Financial Institution

- 18 U.S.C. § 1014 –False Statements to a Financial Institution

---

[1]  The affidavit itself contains many material misrepresentations and/or omissions.  However, for the purpose of this *Franks* motion, the defense will focus only on those misrepresentations and omissions that are germane to court's probable cause determination of the charges alleged in the affidavit.

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

MOTION TO SUPPRESS EVIDENCE AND                    UNITED STATES OF AMERICA V.
REQUEST FOR A FRANKS HEARING             ROBERT F. KANE and SECURITY AVIATION
Page 4 of 16                                                          Case No 3:06-CR-00022-JWS-JDR-2

These alleged categories can be separated into two broad categories: (1) the possession and transportation of an unregistered destructive device; and (2) financial fraud. Campe's affidavit contains numerous material misrepresentations and omissions that are material to any finding of probable cause of these two categories.

### III. Misrepresentations and Omissions Regarding Allegations of Bank Fraud

The affidavit makes material misrepresentations and omits material information in paragraphs 54-62 regarding the allegation of bank fraud.

Paragraph 57 contains a blatant misrepresentation that is material to probable cause. Paragraph 57 provides:

> On October 4, 2005, another Credit Approval Presentation was prepared to apply for a new $500,000 revolving line of credit to pay-off the temporary non-revolving LOC obtained by Stephen "Joe" Kapper the week before. As to this LOC, the borrower listed as "Security Aviation, Inc." with "Ownership" being under the name of Mark Avery, 100%". The loan documentation stated that the purpose of the Credit Approval Presentation was for a "[n]ew $500M revolving line to payoff temporary $500M non revolving line. In the next line, it is stated: "*Borrower has had significant growth since last FYE. Growth is attributed primarily to a large $30MM DOD contract. The new owner is Mark Avery. Mark is well known to the bank and the industry.*" Your affiant has examined Alaska Division of Corporations Business and Professional Licensing Records which indicate that 100% ownership of Security Aviation was transferred from Kapper to Avery on December 5, 2005. (emphasis in original)

Campe's statement that the ownership was transferred on December 5, 2005 is false. The Notice of Change of Officers, Directors or Shareholders was filed on December 5, 2005, but that is just a notice required by state law and does not indicate when the transfer actually took place. *See* Notice of Change of Officers, Directors or Shareholders attached hereto as Exhibit B. The actual transfer of stock was on July 9,

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MOTION TO SUPPRESS EVIDENCE AND
REQUEST FOR A FRANKS HEARING
Page 5 of 16

UNITED STATES OF AMERICA V.
ROBERT F. KANE and SECURITY AVIATION
Case No 3:06-CR-00022-JWS-JDR-2

2005. *See* Exhibit C. Mark Avery was the sole shareholder as of July 9, 2005 and was therefore the new owner of Security Aviation at the time of the October 4, 2005.

The affidavit's misrepresentation regarding the date of stock transfer is materially relevant to probable cause because the affidavit relies on incorrect assumption that Avery was not the owner of Security Aviation at the time of the loan. The misrepresentations is also obviously intentional. There is no reason to believe from the records of the Alaska Division of Corporations Business and Professional Licensing that ownership transferred on December 5, 2005. It clearly states that it is a notice of Change of Shareholders, not an effective date of transfer.

The affidavit also contains material omissions regarding the Wells Fargo loan. The affidavit omits the fact that the government never discussed the loan application with the loan officer who oversaw the loan. *See* Affidavit of Joseph J. Kocienda attached hereto as Exhibit A, at ¶ 9. If the government had talked to the actual loan officer responsible for making the statements cited in the affidavit, the government would have learned that no one from Security Aviation represented to Wells Fargo that they had current government contracts in the millions of dollars.

The actual loan officer is Joseph J. Kocienda. *See generally* Exhibit A . He attests that no one from Security Aviation made any statement in applying for the loan regarding a $30MM DOD contract or $150mm in new government contracts for Medevac and Training as stated in paragraphs 57 and 59 of the affidavit. *See* Exhibit A ¶¶ 5 & 7. Kocienda states that *his* statements cited by the government in paragraphs 57 and 59 of the Campe affidavit were not intended to state that Security Aviation currently had large government contracts. *Id.* Rather, Kocienda intended to say that Security Aviation was

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MOTION TO SUPPRESS EVIDENCE AND
REQUEST FOR A FRANKS HEARING
Page 6 of 16

UNITED STATES OF AMERICA V.
ROBERT F. KANE and SECURITY AVIATION
Case No 3:06-CR-00022-JWS-JDR-2

negotiating for potential new contracts and in a position to obtain new contracts. *Id.* The statement in paragraph 57 that "Growth is attributed primarily to a large $30MM DOD contract") was intended to mean that the growth in company's assets was in preparation for a potential DOD contract that were currently in negotiations. *Id.* at ¶ 5. No one from Security Aviation ever told Kocienda that it had current government contracts of the magnitude cited in the affidavit. Joe Kapper and Rob Kane made clear to Kocienda that the contracts they mentioned were potential contracts that were still being negotiated. *Id.* ¶ 5 & 7.

Moreover, Kocienda did not feel that the loan was high risk given Security Aviation's assets and that he was already intimately familiar with Security Aviation from previous work done providing valuations of Security. *Id.* at ¶ 8. If the government had actually talked to the loan officer whose statements it relied upon in the affidavit, the government would have learned that no bank fraud had occurred. Therefore, the government's omission that it had failed to talk to the loan officer was a material omission.

**IV.     Omission of IRS Audit of Stanley and May Smith Charitable Trust.**

Campe's affidavit make several references to the *May and Stanley Smith Charitable Trust* yet omits the fact that the IRS completed a full audit of the trust in December, 2005. *See* Exhibit C ¶ 4. Paragraph 10 of the affidavit states "Investigators are attempting to determine if any of these trust funds have been utilized to purchase or import contraband to Alaska, including rocket pods/launchers." The IRS just completed a full audit of the trust. The government has detailed knowledge regarding the trust funds and the trust itself. The omission of the completed IRS audit was materially misleading

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

MOTION TO SUPPRESS EVIDENCE AND
REQUEST FOR A FRANKS HEARING
Page 7 of 16

UNITED STATES OF AMERICA V.
ROBERT F. KANE and SECURITY AVIATION
Case No 3:06-CR-00022-JWS-JDR-2

in that it created a false impression of a mysterious trust that the government had no understanding of or information about.

### V. Misrepresentations Regarding Possession of a Destructive Device

Paragraph 33a contains material misrepresentations. Paragraph 33a provides:

> ATF has confirmed to your Affiant that a "rocket pod/launcher" as described herein is a destructive device if it not "de-militarized" and remains capable of expelling projectiles fueled by propellants from tubes each with a bore in excess of one inch. ATF related to your Affiant that to be demilitarized, this type of rocket pod launcher it would be required to make two diagonal cuts through the entire case and body of the rocket pod/launcher cutting the rocket pod/launcher observed by that witness was intact. As such the "rocket pods/launchers" described herein are prohibited destructive devices under federal law in apparent violation of 26 U.S.C. § 5861(d) and (k).

The standard for determining whether a rocket pod is a destructive device is not demilitarization. *See* Robert F. Kane's motion to dismiss filed March 22, 2006.

Also omitted from the paragraphs regarding the pods was any disclosure that in order to be a destructive device or readily convertible into a destructive device the pods would not only have to be compatible with the L-39 aircraft and actually attached to the aircraft, but also that the L-39 aircraft would have to be configured in such a way as to be capable of expelling a projectile through the pods. The pods as they sat in the hangar did not constitute destructive devices. *See* Robert Kane's Motion to Dismiss filed on March 22, 2006. Instead, the magistrate judge was misled into believing that all that was necessary for the pods to constitute a destructive device was to sit in a crate in pieces or alone in a storage room.

Paragraph 33b also omits the material information that Witness I did not have actual or apparent authority to grant Witness E and the Air USA agents access to the

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MOTION TO SUPPRESS EVIDENCE AND
REQUEST FOR A FRANKS HEARING
Page 8 of 16

UNITED STATES OF AMERICA V.
ROBERT F. KANE and SECURITY AVIATION
Case No 3:06-CR-00022-JWS-JDR-2

Palmer hangar. *See* Motion to Suppress Security Aviation's Motion to Suppress the Fruit of Unconstitutional January 21, 2005 Search of Security Aviation's Palmer Hangar and Request for Evidentiary Hearing. Witness I was also aware that he did not have authority to grant access to the Palmer hanger to non Security Aviation personnel. *Id.*

## VI.    Omission of FAA Oversight.

The affidavit also omits the wealth of information concerning substantial FAA oversight of the aircraft, which demonstrated clearly that the planes were going to be utilized for a peaceful purpose. *See* Affidavit of Evan J. Griffith ¶ 11 attached hereto as Exhibit D. This information was material to the lack of credibility of the biased statements of former disgruntled employees regarding the plans for the aircraft.

The affidavit also omits directly relevant information regarding the FAA's oversight of Security Aviation. Security Aviation is a Part 135 operator, *see* 14 C.F.R. 135, which grants the FAA broad powers to oversee the operation of Part 135 operators. Pursuant to 14 C.F.R. § 135.73, the FAA has the right to make inspections at any time or place of Security Aviation's operations and aircraft. The FAA's active oversight was omitted from the affidavit and mischaracterized the operation of Security Aviation. Security Aviation is a heavily regulated entity that was legally required to allow the FAA to inspect its operations. Security's operation of the L-39 aircraft was directly regulated by the FAA.

The affidavit also omitted Security Aviation's active compliance with FAA regulations and registration of the L-39 aircraft. Security Aviation actively worked and communicated with the FAA to ensure that the L-39 aircraft were properly registered and

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MOTION TO SUPPRESS EVIDENCE AND                                    UNITED STATES OF AMERICA V.
REQUEST FOR A FRANKS HEARING                              ROBERT F. KANE and SECURITY AVIATION
Page 9 of 16                                                                              Case No 3:06-CR-00022-JWS-JDR-2

operated. Exhibit D ¶ 11. The omission of this information created a misperception that Security Aviation's operation in general and its operation of the L-39 aircraft specifically was not proper. Nothing could be further from the truth. The FAA was directly overseeing the operation of the L-39 aircraft and Security Aviation was actively working with the FAA to ensure that it complied with the applicable regulations. *Id.*

### VII. Omissions regarding Witness E's and Witness I's bias.

The affidavit relies upon statements of two former Security Aviation employees: Witness E, and Witness I. Witness E is believed to be John Berens a former Security Aviation mechanic. Witness I is believed to be Bob Anthony also a former Security Aviation mechanic. The affidavit omits several pieces of information regarding these witnesses' credibility. Omissions regarding the credibility of a witness are material and require a *Franks* hearing and that the evidence be suppressed. *United States v. Hall*, 113 F.3d 157, 160 (9th Cir. 1996). The affidavit conspicuously omits information regarding the bias of Witness E and Witness I. Witness E's statements regarding the pods are the only evidence that supports that the pods were destructive devices. Witness E is also the only government witness who is able to identify that a rocket pod was in the possession of Security Aviation after December and that the pod was located at the Palmer hangar close to the time of the search warrant. Without Witness E's testimony, there is no evidence that pods possessed by Security Aviation are actually illegal destructive devices, and any evidence that they even possessed a pod is too stale to support probable cause for a search. An affidavit must be based on facts "so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *United States v.*

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MOTION TO SUPPRESS EVIDENCE AND
REQUEST FOR A FRANKS HEARING
Page 10 of 16

UNITED STATES OF AMERICA V.
ROBERT F. KANE and SECURITY AVIATION
Case No 3:06-CR-00022-JWS-JDR-2

*Lacy*, 119 F.3d 742, 745 (9th Cir. 1997).  Other than Witness E's January 21, 2005 account there is no evidence that the Security possessed the pods at the time of the warrant or where they were located.

The affidavit mentions Witness E and Witness I as former employees of Security Aviation, but it omits the material information of why the witnesses were former employees.  Witness E quit his employment with Security Aviation under peculiar circumstances.  On December 31, 2005, Witness E was observed loading all of his equipment into a large U-Haul van type truck.  Griffith Affidavit ¶ 8.  He stated that he was leaving because of problems with Robert Kane.  *Id.*  Witness E left Security Aviation as a disgruntled employee.  *Id.*  Witness I was immediately fired after it was discovered that he permitted Witness E and agents of Air USA into the Palmer Security Aviation hangar to take four L-39MS aircraft.[2]  Griffith affidavit ¶ 9.  Witness I first signed an piece of paper stating that he had granted Air USA personnel access to the hangar, only to state otherwise when speaking with law enforcement about the incident.  *Id.*

Second, Witness E's grudge against Security Aviation extends beyond a normal disgruntled former employee who quit over a dispute with his employer.  Indeed, he was so disgruntled that he participated in illegal taking of four L-39MS aircraft from his former employer Security Aviation.  He even arranged to have Witness I permit Air USA's people access into the hangar without authorization from Gary Cost, the only person authorized to grant such access.  Although the affidavit describes the events on

---

[2]  Witness I's statement in paragraph 35 that Kane was rumored to have a machine gun mounted on a boat in Seward demonstrates the extent of his bias.  An FBI search of the boat in Seward revealed no machine gun.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

MOTION TO SUPPRESS EVIDENCE AND                    UNITED STATES OF AMERICA V.
REQUEST FOR A FRANKS HEARING                       ROBERT F. KANE and SECURITY AVIATION
Page 11 of 16                                      Case No 3:06-CR-00022-JWS-JDR-2

January 21, 2006 where Air USA took four aircraft from Security's possession, it omits information that establishes the bias of Witness E. First, Security Aviation strongly objected to Air USA's Inc.'s taking of the aircraft. Security Aviation paid $2.3 million toward the purchase price of $3.2 for the four aircraft. Security's reason for not making the final payment was that they believed the aircraft were not airworthy and were not delivered as they had been represented by the seller. Griffith Affidavit ¶ 9. This concern turned out to be correct as one of the two planes illegally taken crashed, killing the pilot. The other plane was abandoned in Sitka when the pilot realized that the plane was not capable of being flown safely.

The illegal taking of the aircraft resulted in the police being called to the airport and a police investigation of the situation. *Id.* The fact that Witness E participated in such a covert and contentious undertaking against his former employer shows his bias against Security Aviation. A person willing to engage in deceit against his former employer possesses an obviously extreme bias. The omission of the details of the taking of the aircraft on January 21, 2006, coupled with the manner of Witness E's termination, created a false impression regarding Witness E's credibility. Witness E's bias completely undermines the credibility of his statements regarding the pods.

Witness I signed a paper saying he did not let anyone into the Palmer Hangar on January 21, 2006. After it was discovered that he did let Air USA's people into the hangar, he was fired. As previously stated Witness I did not have the authority to let anyone into the hangar and he knew it. This information was material to Witness I's credibility as it established his bias.

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MOTION TO SUPPRESS EVIDENCE AND
REQUEST FOR A FRANKS HEARING
Page 12 of 16

UNITED STATES OF AMERICA V.
ROBERT F. KANE and SECURITY AVIATION
Case No 3:06-CR-00022-JWS-JDR-2

**VIII.   The witnesses' bias is material.**

The credibility of Witnesses E and I is material to a finding of probable cause. Witness E is the only witness who gave any details relating to the rocket pods that established that they might be "destructive devices" under 26 U.S.C. § 5861(d) and (k). Witness E is the only witness that even states that the pods might be functional. The bias of Witness E and Witness I also puts into context other of their statements in the affidavit.[3] There cannot be a finding of probable cause regarding the search as related to the rocket pods if this omitted information is included.

**IX.   Intentional omission of bias.**

Campe was aware that Witness E was estranged from Security Aviation and that his employer Air USA, Inc. had adverse interests to Security Aviation. In paragraph 33b of his affidavit, Campe stated:

> On January 19, 2006, your Affiant contacted Witness E, who advised your Affiant that on January 21, 2006, the witness and a crew of co-workers would be in Palmer Alaska to repossess four of the L-39/59 jet aircraft from Security Aviation on behalf of another aviation company. Witness E reported that the aircraft were to be repossessed due to Security Aviation's failure to complete the purchase of the aircraft. As noted previously, Witness E also advised that he had previously observed the rocket pod/launcher at the Security Aviation Palmer hanger while he was employed with Security Aviation as late as December 2005. Witness E

---

[3] For instance, the affidavit states that Witness E made statements regarding an unnamed Security Aviation administrator's comments of "hypothetical mission" involving terrorist camps. And that Witness I stated that Kane opened one of the crates and stated "words to the effect that he 'would be able to do target practice now.'" The affidavit also states that Witness I had "heard rumors at Security Aviation that Kane was attempting to get a cannon for the L-39/59 aircraft and that other management personnel were querying how to activate the gunsight on an L-39/59. The credibility of these comments could not be properly evaluated because the affidavit omitted information that demonstrated Witness E and I's bias. With a proper understanding Witness E and I's bias, these bizarre statements regarding Kane and Security Aviation should be accorded no weight.

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MOTION TO SUPPRESS EVIDENCE AND
REQUEST FOR A FRANKS HEARING
Page 13 of 16

UNITED STATES OF AMERICA V.
ROBERT F. KANE and SECURITY AVIATION
Case No 3:06-CR-00022-JWS-JDR-2

stated that he had observed the rocket pod/launcher stored in a second floor parts and storage room, the same room as the batteries and fuel tanks of the L-39/59 aircraft. Witness E further stated that he believed a Security Aviation employee would grant access to the storage room.

In paragraph 34, Campe explains the warrantless search that occurred on January 21, 2006:

> On January 21, 2006, an aviation company, Air USA, sent employees to the Palmer hangar to repossess two L-39/59's from Security Aviation, Inc. and/or Regional Protective Services. One of the employees sent by Air USA was Witness E. Witness I, encountered a current Security Aviation employee, Witness E, at the airport and gave Witness E and others involved in the repossession effort access to the Security Aviation hangar for the purpose of repossessing batteries and fuel tanks for the repossessed L-39 /59 aircraft. Witness E then entered the hanger and went to the second floor parts storage room where Witness E observed a rocket pod/launcher of the same type that Witness E had seen previously at the Palmer hangar in December 2005. Moreover, from your Affiant's review of armament websites and your Affiant's interview of Witness E, the rocker pod/launcher Witness E observed in the Security Aviation Hanger in Palmer was fully consistent and matched in physical appearance a 16x57mm rocket pod/launcher suitable for use on L-39/59 aircraft. Witness E related that the rocket pod/launcher observed by Witness E appeared to have Cyrillic (Russian) alphabet letters on the rocket pod/launcher which composed words in red-stenciled lettering and appeared to be authentic. The rocket pod/launcher appeared to Witness E to be completely intact and functional and appeared to include mounting rings and an electrical connector for attachment to an aircraft's electrical system. Witness E stated that the bore of the individual rocket tubes was well in excess of one inch. Witness E also elaborated to your Affiant that the mounting rings and electrical connector observed on the rocket pod/launcher were on the type of one inch.

Finally, Campe admits to being present at the search on January 21, 2005. In paragraph 37 of his affidavit, Campe states "I have reviewed recently taken aerial photographs of the Palmer hangar and can confirm the existence of the red CON-EX and various wooden crates present within the cartilage of the Palmer Hanger. I also viewed the CON-EX adjacent to the hangar *while present* at the Palmer Hanger on January 21, 2005." (emphasis added).

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MOTION TO SUPPRESS EVIDENCE AND REQUEST FOR A FRANKS HEARING
Page 14 of 16

UNITED STATES OF AMERICA V. ROBERT F. KANE and SECURITY AVIATION
Case No 3:06-CR-00022-JWS-JDR-2

Campe knew the details of Air USA's plan to take the aircraft and was present at the time of the taking. He therefore knew that Witness E was estranged from Security Aviation and that Witness E was working for an employer with a significant adverse interest to Security Aviation. Yet, his affidavit omits the information that would expose Witness E's bias. Campe also must have known that Witness I had been fired for his participation in the taking of the L-39MSs as he omitted that information as well.

## X.   Conclusion

The affidavit in support of the search warrants issued in this case contains numerous false statements and omissions. These statements and omissions are material to the issuance of the warrants. Consequently, a hearing is required. There is also substantial evidence that the false statements and omissions were either intention or reckless. At a *Franks* hearing, the defendant expects to show that these false statements and omissions were intentionally made or made with reckless disregard of the truth. All fruits of the warrants must therefore be suppressed.

DATED this 24th day of March, 2006, at Anchorage, Alaska.

DORSEY & WHITNEY LLP

By: /s/ Allen Clendaniel
Robert C. Bundy, ABA #7206021
Allen F. Clendaniel, ABA #0411084
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Suite 600
Anchorage, AK 99501-5907
(907) 276-4557
bundy.robert@dorsey.com
clendaniel.allen@dorsey.com

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

MOTION TO SUPPRESS EVIDENCE AND
REQUEST FOR A FRANKS HEARING
Page 15 of 16

UNITED STATES OF AMERICA V.
ROBERT F. KANE and SECURITY AVIATION
Case No 3:06-CR-00022-JWS-JDR-2

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 24th day of March, 2006, a true and correct copy of this document was served on:

| | |
|---|---|
| James N. Barkeley<br>Steven Skrocki<br>Assistant United States Attorney<br>Federal Building  U.S. Courthouse<br>222 W. 7th Ave. #9, Rm 253<br>Anchorage, Alaska  99513-7567 | Paul D. Stockler<br>1309 W. 16th Avenue<br>Anchorage, Alaska  99501 |
| Kevin Fitzgerald<br>Ingaldson, Maassen & Fitzgerald<br>813 West 3rd Avenue<br>Anchorage, Alaska  99501 | James L. Kee<br>Kee, Archer & Herberger, P.A.<br>1102 Maple Street<br>Duncan, Oklahoma  73533 |

by electronic means through the ECF system as indicated on the Notice of Electronic Filing, or if not confirmed by ECF, by first class regular mail.

By:   /s/ Allen Clendaniel
         Robert C. Bundy, ABA #7206021
         Allen F. Clendaniel, ABA #0411084
         Dorsey & Whitney, LLP

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

MOTION TO SUPPRESS EVIDENCE AND
REQUEST FOR A FRANKS HEARING
Page 16 of 16

UNITED STATES OF AMERICA V.
ROBERT F. KANE and SECURITY AVIATION
Case No 3:06-CR-00022-JWS-JDR-2