D. John McKay, Esq.
Law Offices of D. John McKay
117 E. Cook Ave.
Anchorage, Alaska 99501
Phone: (907) 274-3154
Fax: (907) 272-5646
Alaska Bar No. 7811117
Attorney for Anchorage Daily News
   and for KTUU-TV, Channel 2 News

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ROBERT F. KANE, a/k/a ) <br> "COMMANDER KANE," and ) <br> SECURITY AVIATION, INC., ) <br> ) <br> Defendants. ) <br> _____ ) | Case No. 3:06-cr-00022-JWS-JDR <br><br><br> **MEMORANDUM IN SUPPORT** <br> **OF MOTION FOR** <br> **PRESS INTERVENTION** |

The Anchorage Daily News ("Daily News") and KTUU Channel 2 ("KTUU") (collectively, "Press") seek to intervene in this case for the limited purposes of addressing restrictions on press or public access to the proceedings and records in, and information about this case.

The court's refusal in its April 6, 2006, Order (Dkt. 112) to formally consider the filing of the Press on issues relating to public access to judicial records in this case, because the Press allegedly lacks standing, was disappointing. (The Press does acknowledge, and appreciate, that the court in fact seemed to take into account some of the arguments and authorities presented by the Press, even if it did not acknowledge doing so.) If the court is suggesting that the Press has no standing to object to restrictions on access to judicial proceedings and records, the Press

respectfully disagrees. It is true that there are a number of Ninth Circuit cases stating that when the press is not a party to the trial court case, the appropriate avenue for appellate review is a writ of mandamus, rather than a direct appeal. References to lack of standing in this context go to standing to bring the matter before the appeals court in one manner rather than another. In none of these cases does the court suggest that the Press should not be heard, or that it has no standing to assert a position in support of public access. In fact, in all of these cases, the Ninth Circuit still fully and fairly addressed the Press's arguments, rather than ignoring them.

The press, as a general rule, clearly has standing to object to proposed restrictions on access to judicial records and proceedings, restrictions on the ability of individuals to communicate with the press, and other interference with its newsgathering activities. As the Supreme Court has noted, "without some protection for seeking out the news, freedom of the press could be eviscerated." *Branzburg v. Hayes*, 408 U.S. 665, 681, 33 L. Ed. 2d 626, 92 S. Ct. 2646 (1972). See also *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 583, 65 L. Ed. 2d 973, 100 S. Ct. 2814 (1980) ("Arbitrary interference with access to important information is an abridgement of the freedoms of speech and of the press protected by the First Amendment.") Implicit in the First Amendment and common law protections for newsgathering is the right, the standing, of the press and public to be heard on these issues. In a related context, the Ninth Circuit stated that "When the court has been made aware of the desires of specific members of the public to be present, reasonable steps should be taken to afford such persons an opportunity to submit their views to the court before exclusion is accomplished." U.S. v. Brooklier, 685 F.2d 1162 (9th Cir. 1982).

Numerous other courts have likewise found that news organizations have standing to challenge restraints on news gathering, whether or not they are directly placed on the news media themselves. See, *e.g.*, United States v. Gurney, 558 F.2d 1202, 1206 (5th Cir. 1977), cert. denied, 435 U.S. 968 (1978) (newspapers and reporter had standing to challenge orders denying access to criminal trial exhibits and transcripts); News American Division, The Hearst Corp. v.

State of Maryland, 214 Md. 30, 447 A.2d 1264, 1269-70 (1982) ("Hearst") (newspapers have standing to challenge a gag order imposed on trial participants in a murder trial); Central South Carolina Chapter Society of Professional Journalists v. Martin, 556 F.2d 706, 707-08 (4th Cir. 1977), cert. denied, 434 U.S. 1022 (1978) (news reporters have standing to challenge gag order in pending criminal trial); see also, In re "Agent Orange" Product Liability Litigation, 96 F.R.D. 582, 583 (E.D.N.Y. 1983) (Pratt, J.) ("If there is a right of access to discovery materials, CBS has standing to assert that right because an order limiting it would impair 'its ability to gather news concerning the trial.'").  See also,  e.g., CBS, Inc. v. Young , 522 F.2d at 234 (6th Cir. 1975), in which the Sixth Circuit struck down a gag order entered in a civil case arising out of the Kent State shootings in May, 1970, holding that petitioner CBS had standing to challenge the order.

> [I]ts ability to gather the news concerning the trial is directly impaired or curtailed.  The protected right to publish the news would be of little value in the absence of sources from which to obtain it.

Id. at 2370-38.  And see, Journal Publishing Co. v. Mechem, 801 F.2d 1233, 1235 (10th Cir. 1986) (media have standing to challenge order restraining jurors from talking to the press or public);  cf., Connecticut Magazine v. Moraghan, 676 F. Supp. 38 (D. Conn. 1987) (gag order that impairs ability to gather news implicates First Amendment, vacated).

It is common practice for courts to permit the press to intervene to challenge restrictions on public access which have been entered or requested, or to otherwise facilitate the consideration of these issues.  See, e..g., Nebraska Press Ass'n. v. Stuart, 427 U.S. at 543 (trial court granted media petitioner's motion to intervene to contest gag order); Press Enterprise v. Superior Court of California, 464 U.S. 501, 505 (1984) ("Press Enterprise I") (superior court heard petition of press to open voir dire examination to the press and public); Press Enterprise v. Superior Court of California, 464 U.S. 501, 505 (1984) ("Press Enterprise II") (press permitted to join in state's motion to release sealed transcript); Richmond Newspapers, Inc. v.

Commonwealth, 448 U.S. 555, 560 (1980) (newspapers permitted to intervene to move to vacate a closure order); Oregonian Publishing Company v. United States District Court, 920 F.2d 1462 (9th Cir. 1990) (newspaper intervened to obtain access to various documents relating to plea agreement filed under seal); In Re Application of Dow Jones & Co., Inc., 842 F.2d 603, 605 (2nd Cir.), cert. denied, 109 S.Ct. 377 (1988) ("Dow Jones") (at news agencies' request, trial court heard oral argument on whether gag order should be continued; both the district court and the court of appeals rejected that argument that the press lacked standing, relying on the media Intervenors' right to challenge the restrictions at issue because they are potential recipients of the restricted information.  Id. at 606-08.); United State v. Criden, 675 F.2d 550, 552-53 and n.2; 559-60 (3d Cir. 1982) (newspapers permitted by trial court to intervene to move for access to sealed transcript of closed pretrial hearing in one of the Abscam cases); United States v. Cianfrani, supra, 573 F.2d at 843 (3d Cir. 1978) (trial court granted motion by press to intervene for the limited purpose of opposing motion to close suppression hearing); United States v. Chiavo, 504 F.2d 1, 4, 7-8 and n.15 (3d Cir), cert. denied, 419 U.S. 1096, 95 S.Ct. 690, 42 L.Ed.2d 688 (1974) (gag order requires notice and hearing for press and other parties restrained); Belo Broadcasting Corp. v. Clark, 654 F.2d 423 (5th Cir. 1981) (media permitted by trial court to bring petition to vacate restrictions placed on it).

  While we might hope that other parties will vigorously champion the rights of the Press and public, as a practical matter we know that the interests of the existing parties sometimes diverge from the public's interest in access.  At times in this case, the prosecution has been responsible for withholding documents or information, at other times the defense has supported restrictions.  Moreover, as issues of access arise that may require a balancing of interests, the court may need to consider alternatives to these restrictions that may be at odds with the

priorities of either the prosecution or defense, or both. The possibility that other parties here will at least partially advance the same interests as those the Press seeks to secure does not obviate the need for direct representation of the Press and public interests.

As noted above, the court's refusal in its April 6, 2006, Order (Dkt. 112) to formally consider the filing of the Press was disappointing. Rather than gratuitously disregarding the filing of the Press, the court should welcome this additional perspective, since the court — as opposed to the litigants — also bears a responsibility to the public to ensure that court proceedings and records remain open unless extraordinary circumstances require otherwise, even when the interests of the litigants may lead them to argue otherwise.

A review of the many cases around the country in which the press has addressed restrictions on access reveals that as often as not, the newspaper or broadcast news organization involved intervenes in the case. Whether this means that in these cases, a reviewing court considers the matter as an appeal or as a writ of mandamus is irrelevant to whether this court should give fair and full consideration to the position of the Press on restrictions, by allowing intervention or otherwise.

In this case, the issue presently before the court is the withholding for the last month of exhibits admitted and used by the parties in public court proceedings. There have been other issues in this case, however. Indeed, as undersigned counsel noted in addressing the court at the close of the initial portion of the preliminary hearing in February, this case has seen unusual and extraordinary restrictions. For example, as noted at the hearing, at the outset of this case, the case file was not available for public inspection, no public docket sheet was made available, and in fact, the clerk's office refused to even acknowledge that it existed when asked for it by name. Documents were withheld that shouldn't have been. Judicial proceedings were scheduled without public notice, and when the court was asked about them, the clerk's office and magistrate's staff could or would not acknowledg, even hours before the preliminary hearing started, that there was a hearing of any kind, let alone why this hearing that should have been —

and eventually was — public did not show up on the docket sheet, or what the basis for the secrecy was. Even this week, there have been documents that have not appeared in any form on the docket sheet, when there should at least be some public acknowledgement, even for a sealed pleading, that a document exists and as much as can be noted to identify it generically. When the Press raised concerns about these sorts of problems, and asked the court to address it, instead of voicing concern about the inappropriate restrictions, or the need to ensure that the staff was appropriately handling cases and pleadings that might involve sealed filings, the court admonished counsel not to violate rules governing publicity. This, in turn, has led to the motion presently before the court, with the U.S. Attorney withholding documents that it has no reason not to produce, and is willing to produce, out of an overabundance of caution in response to this court's admonition.

Under these circumstances, the court should not put further roadblocks in the way of the Press as they seek to ensure that the public has all the access to which it is entitled in this case. The motion to intervene should be granted. Should the court decide that it must treat the Press's filing as a miscellaneous motion rather than grant intervention, it should do this, rather than require a filing of a separate civil suit, which would impose needless delay and expense, not to mention create the awkward situation of inviting a district judge assigned in a separate civil suit to monitor and oversee access issues in this case.

Dated at Anchorage, Alaska, this __14th__ day of April, 2006.

        LAW OFFICES OF D. JOHN MCKAY
        Attorney for Press Intervenor
        Anchorage Daily News


By: _____
     D. John McKay
     Alaska Bar No.7811117

Certificate of Service

The undersigned certifies that on the 14th of April, 2006,
a true and correct copy of this document was served on

James N. Barkeley
Steven Skrocki
Assistant United States Attorney
Federal Building, U.S. Courthouse
222 W. 7th Ave., #9, Rm 253
Anchorage, Alaska  99513-7567

Robert C. Bundy
Allen F. Clendaniel
Dorsey & Whitney, LLP
1031 W. Fourth Ave.
Anchorage, Alaska 99501-5907

James L. Kee
Kee, Archer, & Herberger, P.A.
1102 Maple Street
Duncan, Oklahoma  73533

Paul Stockler
1309 W. 16th Avenue
Anchorage, Alaska  99501

Kevin Fitzgerald
Ingaldson, Maassen & Fitzgerald
813 W. 3rd Ave.
Anchorage, Alaska 99501

by electronic means through the ECF system as indicated on the
Notice of Electronic Filing, or if not confirmed by ECF, by first
class regular mail.

By:  /s/  D. John McKay
D. John McKay, ABA #7811117