DEBORAH M. SMITH
Acting United States Attorney

STEVEN E. SKROCKI
JAMES BARKELEY
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: steven.skrocki@usdoj.gov
Email: jim.barkeley@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No.3:06-cr-022-JWS |
| | ) |
| Plaintiff, | ) COUNT 1: |
| | ) CONSPIRACY TO RECEIVE AND |
| vs. | ) POSSESS AN UNREGISTERED |
| | ) DESTRUCTIVE DEVICE |
| ROBERT F. KANE, | )    Vio. of 18 U.S.C. §§ 371 and 2 |
| a/k/a "COMMANDER KANE," and | ) |
| SECURITY AVIATION, INC., | ) COUNT 2: |
| | ) POSSESSION OF UNREGISTERED |
| Defendants. | ) DESTRUCTIVE DEVICES |
| | )    Vio. of 26 U.S.C. § 5861(d) |
| | ) |
| | ) COUNT 3: |
| | ) ATTEMPTED POSSESSION OF |
| | ) UNREGISTERED DESTRUCTIVE |
| | ) DEVICES |
| | )    Vio. of 26 U.S.C. § 5861(d) |
| | ) |
| | ) COUNT 4: |
| | ) UNLAWFUL TRANSPORTATION |
| | ) OF DESTRUCTIVE DEVICES |
| | )    Vio. of 18 U.S.C. §§ 922(a)(4) and |
| | ) 924(a)(1)(B) |

## FIRST SUPERSEDING INDICTMENT

The Grand Jury Charges That:

### General Allegations

At all times material to this indictment:

A.    Businessman A is known to the grand jury as a resident of Eagle River, Alaska.

B.    Businessman A is known to the grand jury to be the one-hundred percent shareholder, Secretary, and Chairman of Security Aviation, Inc. It is known to the grand jury that Security Aviation was purchased by Businessman A in mid-July 2005.

C.    In addition to Security Aviation, Inc., Businessman A is known to the grand jury to be the owner of the following businesses:

    a.    High Security Aviation, L.L.C.,

    b.    Security Aviation Rotorwing, L.L.C.,

    c.    Regional Protective Services, L.L.C.,

    d.    Regional Phone Solutions, L.L.C.,

    e.    Regional Property Services, L.L.C.

It is known to the grand jury that all of the above listed businesses were incorporated or created as Limited Liability Companies by Businessman A between January, 2004 and January, 2006. In addition, Businessman A created three additional Limited Liability Companies with the initials "R.P.S."

D.  It is known to the grand jury that Security Aviation maintains an address of 6121 South Airpark Drive, Anchorage, Alaska. It is known to the grand jury that Regional Protective Services, L.L.C., maintains its principle place of business at 3230 C Street, Anchorage, Alaska.

E.  It is known to the grand jury that Businessman A employed the defendant Robert F. Kane, a/k/a "Commander Kane" (hereinafter Kane) to perform services for Businessman A's companies, including, but not limited to Security Aviation, Inc., Regional Protective Services, L.L.C., High Security Aviation, L.L.C., and Regional Phone Solutions, L.L.C., and that Kane was a principal with authority, for example, to hire and fire employees, to spend company funds and to purchase aircraft.

F.  In a policy memorandum dated August 10, 2005, Businessman A, the Chief Executive Officer of Regional Protective Services, L.L.C., informed all employees of the subsidiary company, Regional Phone Solutions, L.L.C., of the following:

*   *   *   *

> *"My most effective asset is Rob Kane. When he is speaking, he has the same authority as if I were speaking. To make this perfectly clear, if Rob were to walk up to any one of you...and say, "You're fired," you're fired."*

*   *   *   *

This memorandum appeared on Regional Protective Services, L.L.C., letterhead of which Regional Phone Solutions, L.L.C., is a subsidiary.

G. Businessman A said in a wire transfer authorization dated July 11, 2005, that "Security Aviation is a wholly owned subsidiary of Regional Protective Services, L.L.C." In another wire transfer dated July 21, 2005, Businessman A wired funds from a Regional Protective Services Account to an aviation company for the sale of an L-39 Albatross aircraft. In a note on the wire transfer, Businessman A stated that the "aircraft purchase" was "for the subsidiary" of Regional Protective Services, "Security Aviation".

H. It is known to the grand jury that Businessman A provided to Kane compensation for his services in the form of a cash salary, frequent cash withdrawals from at least one specific account, vehicles, and a large motor yacht for his personal use. The vehicles and motor yacht were each registered to Regional Protective Services, L.L.C. Kane further received compensation from Businessman A in the form of the use of a large home located in Eagle River, Alaska, titled to Regional Property Services, L.L.C. It is known to the grand jury that Businessman A is the sole owner and registered agent of Regional Property Services, L.L.C.

I. It is known to the grand jury that Kane has adopted the moniker, "Commander" although there is no record of Kane having ever served in the United States military. As of February 2, 2006 Kane was in possession of digitally scanned and digitally modified identification claiming membership in the Philippine Coast Guard Auxiliary.

J.    The defendant Kane maintained offices under his employ with Businsessman A, at Regional Protective Services, L.L.C., located at 3230 C. Street, Anchorage, Alaska, and at 6121 South Airpark Drive, Ted Stevens Anchorage International Airport, Anchorage, Alaska, the location of Security Aviation, Inc.

K.    At a time unknown, but beginning in 2005, and continuing up to on or about November, 2005, Regional Protective Services, L.L.C., and High Security Aviation, L.L.C., purchased eight (8) Aero Vodochody L-39 *Albatross* aircraft, a Czechoslovakian two-seat trainer/light attack capable aircraft, and attempted to purchase six additional Aero Vodochody L-39 aircraft from a private company. According to Federal Aviation Administration records there are no liens in existence for the eight Aero Vodochody L-39 *Albatross*.

L.    The two-seat Aero Vodochody L-39 *Albatross* possesses a ground attack capability. It can be armed to carry a combination of weapons, including a 23-mm gun pod, several bombs, 130-mm rocket pod launchers or 57-mm rocket pod launchers. The 57-mm rocket pod launcher is designated as the UB-16-57U. This particular rocket pod launcher can carry a total of 16 Soviet Air Force "S-5" rockets (hereinafter "S-5"). Each S-5 rocket has a diameter of 2.2 inches and a range of approximately two (2) to two and one-half (2 1/2) miles.

M.   It is known to the grand jury that Security Aviation, Inc., employees, and others known and unknown to the grand jury, did locate, print and collect information on the S-5 air-to-surface rocket which is used in the UB-16-57U rocket pod launcher.

N.   It is known to the grand jury that Security Aviation, Inc., personnel did collect and retain information on solid rocket motors and warheads for the S-5 rocket including 57-mm HEAT (high explosive, anti-tank) warheads; HEAT/FRAG (high explosive/fragmentation) warheads, and HE (High Explosive) warheads.

O.   It is known to the grand jury that Security Aviation, Inc., personnel did collect and retain technical documentation attributed to an air force of a foreign power and Aero Vodochody at the Ted Stevens Anchorage International Airport hanger in the form of shooting and bombing tables for the L-39 ZA *Albatross* aircraft. The information included in the table of contents: "Launching the rockets against ground targets". "Shooting at a ground target with the gun-sight in 'FIXED' mode", and "Shooting at a ground target with the gun-sight operating in 'GYRO' mode". The manual also included information for air to ground gunnery and the dropping of bombs from the L-39ZA aircraft.

P.   It is known to the grand jury that on or about February 2, 2006, Security Aviation, Inc., personnel maintained at the Palmer Hangar L-39 technical manuals which detailed the mounting, loading with rockets and firing sequence, among other things, of the 57-mm UB-16-57U rocket pod launcher on an L-39 aircraft.

Q.   As of February 2, 2006, one of the L-39 *Albatross* aircraft purchased by Regional Protective Services, L.L.C., had inscribed on the cockpit canopy frame of the second seat of the aircraft *"CMDR. R.F. Kane"*.

R.   On or about October 5, 2005, a Security Aviation, Inc., consultant prepared a proposal offering the Air Force of a certain foreign country pilot training using the L-39 aircraft.

S.   It is known to the grand jury that Security Aviation, Inc., employees maintained a file referencing the design of a military-style patch which featured an L-39 jet aircraft superimposed over the globe. On the edges of the patch were the words, "Kane's Killers."

T.   It is known to the grand jury that Security Aviation, Inc., employees maintained in the same file another patch identical to the "Kane's Killers" patch; however the second patch read, "Argonauts." The word "Argonauts" was defined in documents in the same file as "a person who is engaged on a rewarding quest, an adventurer." On the page bearing the "Argonauts" patch, a Security Aviation, Inc,. employee wrote that the name "Argonauts" the would be more "politically correct" than the name of "Kane's Killers."

U.   The grand jury incorporates each of the general allegations set forth in paragraphs A-T into each count of the indictment as if fully set forth therein.

## COUNT 1

### CONSPIRACY TO RECEIVE AND POSSESS
### AN UNREGISTERED DESTRUCTIVE DEVICE
### Vio. 18 U.S.C. § 371

1.  From a time unknown, but beginning on or about September 1, 2005, and continuing to on or about February 2, 2006, in the District of Alaska, and elsewhere, ROBERT F. KANE, a/k/a "Commander Kane", and others known and unknown to the grand jury, did knowingly, willfully and unlawfully combine, conspire, confederate and agree with others known and unknown to the United States, to commit acts in violation of the laws of the United States, namely:

To knowingly receive and possess four (4) 57-mm UB-16-57U rocket pod launchers, a destructive device, without registering the rocket pod launchers in the National Firearms Registration and Transfer Record.

All of which is in violation of Title 26, United States Code, Sections 5861(a) and (d).

2.  In furtherance of the conspiracy, and in order to effect its objects, ROBERT F. KANE, a/k/a "Commander Kane," defendant herein, and others known and unknown to the grand jury, committed, or caused to be committed, the following overt acts:

Overt Act 1:

At a time unknown to the grand jury, but on or about October 13, 2005, Robert F. Kane did direct Security Aviation, Inc., personnel to locate rocket pods for the L-39 Albatross aircraft.

Overt Act 2:

> At a time unknown to the grand jury, but after October 13, 2005, Robert F. Kane directed personnel at Security Aviation, Inc., to purchase and have shipped to Security Aviation, Inc,. four (4) 57-mm UB-16-57U rocket pods from the State of Pennsylvania.

Overt Act 3:

> At a time unknown to the grand jury, but after September 30, 2005, two 57-mm UB-16-57U rocket pods and two 150-liter drop tanks were shipped from Pennsylvania to an employee of Security Aviation, Inc., for delivery to the Security Aviation hanger at the Ted Stevens Anchorage International Airport.

Overt Act 4:

> At a time unknown, but believed to be after October 13, 2005, the rocket pods arrived at Security Aviation's hanger at 6121 South Airpark Place, Ted Stevens Anchorage International Airport, where they were opened and inspected by Robert F. Kane. Upon opening the crates containing two of the 57-mm UB-16-57U rocket pod launchers Robert F. Kane stated, "Now I can go target practice."

Overt Act 5:

> On or about February 2, 2006 two of the four 57-mm UB-16-57U rocket pod launchers were stored along with 8 L-39 *Albatross* aircraft in a hanger in Palmer, Alaska which was leased by Security Aviation, Inc,.

Overt Act 6:

On or about February 2, 2006, Security Aviation, Inc., and Regional Protective Services, L.L.C., possessed pylons for the L-39 *Albatross* which, when mounted on the L-39 Albatross aircraft would permit mounting of the 57-mm UB-16-57U rocket pod launchers on the *Albatross* aircraft.

All of which is in violation of and contrary to Title 18, United States Code, Section 371, and 18 U.S.C. § 2.

## COUNT 2

### RECEIPT AND POSSESSION OF UNREGISTERED DESTRUCTIVE DEVICES
### Vio. 26 U.S.C. § 5861(d)

3.  From a time unknown, but beginning on or about September 1, 2005, and continuing to on or about February 2, 2006, in the District of Alaska, and elsewhere the defendants, ROBERT F. KANE and SECURITY AVIATION, INC., did knowingly receive and possess two rocket pod launchers, specifically two (2) 57-mm UB-16-57U rocket pod launchers which had not been registered to ROBERT F. KANE and SECURITY AVIATION, INC., in the National Firearms Registration and Transfer Record.

All of which is in violation of and contrary to Title 26, United States Code, § 5861(d).

## COUNT 3

### ATTEMPTED RECEIPT AND POSSESSION OF
### UNREGISTERED DESTRUCTIVE DEVICES
### Vio. 26 U.S.C. § 5861(d)

4. From a time unknown, but beginning on or about September 1, 2005, and attempt to receive and possess four (4) rocket pod launchers, specifically four (4) 57-mm UB-16-57U rocket pod launchers which had not been registered to ROBERT F. KANE and SECURITY AVIATION, INC., in the National Firearms Registration and Transfer Record.

    a.    On or about September 27, 2005, ROBERT F. KANE and SECURITY AVIATION took a substantial step toward the attempted receipt and possession of the previously-described rocket pod launchers, by wire transferring a down payment of $5,000 dollars of an agreed upon purchase price of $18,720.00 dollars for the four (4) rocket pod launchers and four (4) L-39 fuel tanks to Astradyne, Inc., in Philadelphia, Pennsylvania.

All of which is in violation of and contrary to Title 26, United States Code, § 5861(d).

11

## COUNT 4:

UNLAWFUL TRANSPORTATION OF DESTRUCTIVE DEVICES
Vio. of 18 U.S.C. § 922 (a)(4) & 924(a)(1)(B)

7.  From a time unknown, but beginning on or about September 1, 2005, and continuing to on or about February 2, 2006, in the District of Alaska, and elsewhere the defendants, ROBERT F. KANE and SECURITY AVIATION, INC., each not being a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, did knowingly transport in interstate commerce destructive devices, to wit: two rocket pod launchers, specifically two (2) 57-mm UB-16-57U rocket pod launchers, without authorization from the Attorney General of the United States consistent with public

//

//

//

//

//

//

safety and necessity.

All of which is in violation of and contrary to Title 18, United States Code, § 922 (a)(4) and § 924(a)(1)(B).

A TRUE BILL.

s/ Grand Jury Foreperson
GRAND JURY FOREPERSON

s/ Steven E. Skrocki
STEVEN E. SKROCKI
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: steven.skrocki@usdoj.gov

s/ James Barkeley
JAMES BARKELEY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: jim.barkeley@usdoj.gov

s/ Deborah M. Smith
DEBORAH M. SMITH
Acting United States Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Email: deb.smith@usdoj.gov

DATED: 4/18/06