**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA | **3-06-cr-00022-JWS-JDR** |
| Plaintiff, | |
| vs. | **RECOMMENDATION ON DEFENDANT SECURITY AVIATION'S MOTION TO SUPPRESS EVIDENCE AND REQUEST FOR FRANKS HEARING** |
| ROBERT F. KANE, a.k.a. Commander Kane, and SECURITY AVIATION, INC., | |
| Defendants. | (Docket Entries 73 & 76) |

Defendant Security Aviation, Inc., moves to suppress all evidence

seized pursuant to six search warrants on grounds that the affidavit supporting the

search warrants contains material false statements or omissions made intentionally

or with reckless disregard for the truth.[1]  Security Aviation requests an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 152 (1978).  Docket entry 76.  The motion to suppress and request for Franks hearing are opposed by the government. Docket entry 103.  Upon due consideration of the documents and record herein, the magistrate judge recommends that the motion to suppress be denied without a Franks hearing.

A Franks hearing is required when the defendant makes a preliminary showing that the affidavit contained intentionally or recklessly false statements or misleading omissions, and the affidavit cannot support a finding of probable cause without the alleged false information.  Franks, 438 U.S. at 171-72; United States v. Reeves, 210 F.3d 1041, 1044 (9th Cir. 2000).  The burden is on the defendant to prove a Franks violation by a preponderance of the evidence.  United States v. Dozier, 844 F.2d 701, 705 (9th Cir. 1988).  Mere negligence or inadvertence does not constitute a Franks violation.  Id.; United States v. Collins, 61 F.3d 1379, 1384 (9th Cir. 1995).  The preliminary showing to obtain a Franks hearing has been outlined by the Supreme Court opinion.  In Franks, the Supreme Court stated:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of

---

[1]  The warrants are identified as: 3:06-mj-00008-JDR; 3:06-mj-00009-JDR; 3:06-mj-00010-JDR; 3:06-mj-00016-JDR; 3:06-mj-00017-JDR; and 3:06-mj-00018-JDR.

reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any non-governmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

438 U.S. at 171-72.

## Alleged Misrepresentations and Omissions Regarding Bank Fraud

Security Aviation contents that the affidavit of Special Agent Matthew Campe, FBI, contains material misrepresentations and omits material information regarding the allegation of bank fraud. Security Aviation challenges Campe's statement that the ownership of Security Aviation was transferred from [Stephen J.] Kapper to Mark Avery on December 5, 2005. (Paragraph 57 of Campe's affidavit.) Security Aviation relies upon a March 24, 2006, affidavit of Mark Avery stating that he purchased 100 percent of the stock of Security Aviation on July 9, 2005, from the estate of Michael R. O'Neil. *See*, exh. C to docket entry 73.

Paragraph 57 of the affidavit states that special agent Campe reviewed Alaska Division of Corporations business and professional licensing records which indicated that 100 percent ownership of Security Aviation was transferred from Kapper to Avery on December 5, 2005.  Security Aviation has not proffered any evidence to substantiate the claim that Agent Campe gave false or reckless information about the ownership of Security Aviation.  Whether or not Avery was the owner of Security Aviation at the time of the loan is not significant to the finding of probable cause since Avery was at least a director and chairperson of Security Aviation at the time.  Campe's affidavit states that his information came from public record, and Security Aviation has not shown that public information would have shown the transfer of ownership to Avery in July 2005.  The allegation of bank fraud is not dependent upon proving that Avery was not the owner of Security Aviation at the time of the loan.

Security Aviation alleges that the affidavit contains material omissions regarding the Wells Fargo loan.  The defendant faults the agent for not stating in his affidavit that he had not discussed the loan application with a loan officer who oversaw the loan.  The defendant claims this is significant because had the agent spoken with Joseph J. Kocienda, Senior Relationship Manager with the main office of Wells Fargo on Northern Lights Boulevard, the agent would have learned that no

one from Security Aviation represented to Wells Fargo that they had current government contracts in the millions of dollars.[2]

Paragraph 57 of the affidavit refers to an October 4, 2005, credit approval presentation listing the borrower as Security Aviation, Inc., with ownership under the name of Mark Avery, 100 percent.  The affidavit quotes from a loan document stating that "growth [of Security Aviation] is attributed primarily due to a large $30MM DOD contract."  In his affidavit, Kocienda explains that his statements cited by the government in paragraphs 57 and 59 of the Campe affidavit were not intended to state that Security Aviation currently had large government contracts. Kocienda explains that he intended to say that Security Aviation was negotiating for potential new contracts and was in a position to obtain them.

The standard is not what Agent Campe could have done but what he did with respect to his statements in the warrant affidavit.  United States v. Miller, 753 F.2d 1475, 1478 (9th Cir. 1985) ("It might have been prudent for the federal agents to check on [an informant's] background and criminal record, but their failure to do so is not reckless disregard.") Here, the failure to investigate more fully is not evidence of "reckless disregard" of the truth.  As the government points out, what was in the mind of Kocienda at the time has no bearing on what the documents

---

[2]  After this loan was made, Kocienda went to work for Security Aviation.

reflected during SA Campe's investigation.  The agent was not expected to guess at what the bank officer meant to say.

### Alleged Omissions of IRS Audit of Charitable Trust

Campe's affidavit refers to the May and Stanley Smith charitable trust. Security Aviation contends that the omission of the fact that the IRS completed a full audit of the trust in December 2005 merits a <u>Franks</u> hearing.  Security Aviation claims that the omission of the IRS audit was materially misleading in that it created a false impression of a trust fund that the government had no information about.

The credit approval presentation for Security Aviation's loan from Wells Fargo Bank contains "approvers" comments attributed to Joseph Kocienda as follows: "Security has acquired over $15MM in aircraft asset(s) over the past ninety days under new ownership and has acquired over $150MM in new government contracts for MedVac and training. . . ." *See*, exh. 3, p. 2 to docket entry 103.  Agent Campe's information was not only that  there was misrepresentation in obtaining the loan, but that there was no apparent legitimate source for the money coming into Security Aviation other than from the trust.  Apparently Wells Fargo had similar questions in the loan application process.  It is understandable that the FBI would not attempt to interview Kocienda about the very loan that was being questioned in its investigation.

## Omission of IRS Audit

Security Aviation offers no evidence that Agent Campe was aware that the IRS had completed an audit of the trust.  In fact, the government claims he was unaware that an audit had occurred.  Even if the affidavit had disclosed that an audit had occurred, there is no showing that an audit would have addressed whether the charitable trust was being spent appropriately.

## Alleged Misrepresentations Regarding Destructive Device

Security Aviation criticizes the reference in paragraph 33a of Campe's affidavit addressing whether the rocket pod/launcher had been "de-militarized."  The defendant argues that the standard for determining whether a rocket pod is a destructive device is not de-militarization.  The search warrant sought the pods themselves.  The government was not required to establish operability of the pods prior to seeking a warrant for their seizure.  The defendant argues that the pods as they sat in the hangar did not constitute destructive devices.  Security Aviation suggests that a pod still in a crate in a storage room could not constitute a destructive device.  This ignores the ability to readily convert the items sought into a destructive device.  It was not necessary that the affidavit state that the pods were actually attached to the aircraft.  It was not necessary that the rocket pods in fact constitute destructive devices within the meaning of the federal law so long as it was

reasonable for the agent to conclude that the pods probably were destructive devices to which the law applied.

The motion to suppress claims that paragraph 33b of Campe's affidavit omitted material information when it failed to state that Witness I (Anthony) did not have actual or apparent authority to grant Witness E (Berens) and the Air USA agents access to the Palmer hangar located at 801 East Cope Industrial Way, Palmer, Alaska. The defendant states that Witness I was also aware that he did not have authority to grant access to the Palmer hangar to non-Security Aviation personnel.  From the evidence adduced at the April 20, 2006 evidentiary hearing, I conclude that Witness I (Anthony) did have apparent authority to admit Berens to the hangar, and Agent Campe did not know otherwise at the time.  Berens arranged for his entry to the hangar to retrieve fuel tanks and batteries that were part of the planes being repossessed.  That Anthony may have been aware that he did not have authority to grant any non-employee entry to the Security Aviation hangar is of no moment because neither Anthony nor anyone else is alleged to have brought that fact to the attention of Agent Campe before he applied for the search warrant.

The motion does not contain evidence to indicate that Agent Campe made any material representations or omission in his statements in this regard. Paragraph 33b states that the affiant received information from an AT&F agent that a former aircraft mechanic employed by Security Aviation, Witness E (John Berens),

had reported to the AT&F that Security Aviation possessed a rocket pod/launcher at the Palmer, Alaska, hangar leased by Security Aviation. Witness E advised that he previously had observed the rocket pod/launcher at the hangar while employed with Security Aviation as late as December 2005. The statement that Witness E believed a Security Aviation employee would grant access to the storage room was not a significant fact in the affidavit since the agent was seeking a search warrant which would provide the needed access to agents executing the warrants. Agent Campe's failure to investigate the authority of witnesses to gain access to Security Aviation's hangar does not meet the *prima facie* showing needed for a <u>Franks</u> hearing on that issue.

### Alleged Omission of FAA Oversight

The moving defendant claims that the affidavit omits that the airplanes were going to be used for a peaceful purpose and relevant information regarding the FAA's oversight of Security Aviation. The FAA's oversight is not an important fact in the determination of probable cause because such oversight does not by itself have a direct bearing upon whether there is evidence of the alleged crimes sought. For example, just because a federal bank may be subject to oversight by the Federal Reserve Board or other government agencies does not mean that officials of that bank could not be engaged in fraudulent activities. The fact that the aircraft are

regulated by the government detracts little from the facts supporting probable cause for the underlying investigation.

## Omissions Regarding Witnesses E and I

Security Aviation suggests that the affiant failed to disclose information relevant to the credibility or bias of the "former disgruntled" employees who provided information to Agent Campe that he used in his affidavit.  In support of this point, the defendant offers the affidavit of Evan Griffith, who is a consultant for Security Aviation.   In his affidavit, Mr. Griffith characterizes certain former employees of Security Aviation as disgruntled employees.

Witness E provided information that a rocket pod was in the possession of Security Aviation after December, and that the pod was located at the Palmer hangar close in time to the issuance of the search warrant.  The question of whether Agent Campe knowingly failed to disclose his entry to the hangar is addressed in the recommendation on the docket entry 71 motion to suppress.   Agent Campe's observations in the hangar were inculpatory, not exculpatory.

The defendant faults the affiant for not stating in his affidavit why Witnesses E and I were "former" employees.  In the defendant's motion Security Aviation states that Witness E quit his employment with Security Aviation "under peculiar circumstances." There is no legal requirement that an affidavit for a search warrant characterize a former employee of the target company as "disgruntled" or

explain the circumstances of that former employee's termination with the company. There is no reason to believe Agent Campe knew the "peculiar circumstances" of Anthony's departure or disagreement with Security Aviation before presenting his search warrant affidavit.

At the April 20 hearing, it was disclosed that Anthony (Witness I) was fired because he let Berens and those persons accompanying him into the hangar and initially lied to his supervisor about what he had done.  It is undisputed that the witnesses had access to the observations they provided to law enforcement and whether or not the witness was a disgruntled employee does not materially affect the probable cause determination.  There is no showing that Agent Campe was aware of the information addressing the bias of the witnesses when he drafted his affidavit. It was not germane to the affidavit to set forth the history of the witnesses relationship to the Security Aviation dispute with Air USA.  The details of the prior removal of aircraft by Air USA raises matters collateral to the probable cause determination for the search warrants.

Under the defendant's version, law enforcement should have conducted a collateral investigation into the relationships between the witness informants and Security Aviation, Inc., Robert Kane and Mark Avery before providing statements from those witnesses in the search warrant application.  The information from the witnesses would still have been included in the warrant affidavit even if the credibility

information relied upon by the defendant had also been set forth.  Assuming arguendo that biased material about the witnesses' relationship to Security Aviation was known to the agent and intentionally omitted, I reject the claim that the statements of Witnesses E and I (Berens and Anthony) should be excluded because more was not said in the affidavit about their past relationship with Security Aviation. Even if the affidavit stated Witness E had been fired, this would have been only one factor in determining under the totality of circumstances whether it was probable that evidence of a crime existed at the places sought to be searched.

        The defendant cites paragraph 33b in support of its claim that Agent Campe was aware that Witness E was estranged from Security Aviation.  To the extent that the paragraph may be so construed, then it follows that Agent Campe did not fail to reference the bias of Witness E in the affidavit.  The defendant claims that Agent Campe "must have known" that Witness I had been fired by Security Aviation for his participation in the  taking of the L-39 MSS aircraft.  Having been fired from employment would provide an explanation and motive for the person providing information to law enforcement concerning alleged wrong-doing by his employer, but it would not render the information unreliable in light of the corroborating information in the affidavit.  A reasonably prudent judicial officer would not have totally discounted the statements and observations reportedly made by Witnesses E and I. Because the warrant is issued on the basis of probable cause to believe that an

offense occurred and that evidence may be located in a particular place, a law enforcement officer as well as the court may rely upon information received from informants even though it is certainly a possibility that such witness(es) may be biased in his statements.  The probable cause assessment is based on the probability that the statements and observation may be correct, especially when corroborated by other witnesses and observations.

The defendant has not made a sufficient showing for a <u>Franks</u> hearing that SA Campe illegally entered the Security Aviation hangar in Palmer.  This issue was sufficiently addressed at the suppression hearing on the motion to suppress, docket entry 71.  Omission that SA Campe was present at the time of the repossession of aircraft claimed by Air USA was not detrimental to the issuance of the warrant.  The evidence is that Agent Campe did not participate in the repossession of the airplanes on the tarmac and met Berens after the planes had been moved.  *Cf.,* <u>United States v. Whitworth</u>, 856 F.2d 1268, 1281 (9th Cir. 1988).

In summary, the defendant has failed to make a substantial preliminary showing that the Campe affidavit contains reckless or deliberate omissions of fact that tend to mislead, and to demonstrate that the affidavit in its modified version would not be sufficient to support a finding of probable cause.  Therefore, a separate <u>Franks</u> hearing is not warranted.  <u>United States v. Kyllo</u>, 37 F.3d 526, 529 (9th Cir. 1994).  The motion to suppress should be denied.  IT IS SO RECOMMENDED.

DATED this 4th day of May, 2006, at Anchorage, Alaska.


  /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **4:00 p.m. Friday, May 5, 2006**, to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal.  McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981).  The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000).  Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers.  Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support.  Response(s) to the objections shall be filed on or before **NOON, Monday, May 8, 2006**.   The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders.  Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment.  See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).