Robert C. Bundy, ABA #7206021
Allen F. Clendaniel, ABA #0411084
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Suite 600
Anchorage, AK 99501-5907
Telephone:   (907) 276-4557
Facsimile:    (907) 276-4152

Attorneys for SECURITY AVIATION, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>v.<br><br>ROBERT F. KANE, a/k/a "COMMANDER KANE," and SECURITY AVIATION, INC.,<br><br>             Defendants. | Case No. 3:06-CR-00022-JWS-JDR-2<br><br>**SECURITY AVIATION, INC.'S TRIAL BRIEF** |

Security Aviation, Inc. ("Security Aviation") submits this brief to assist the Court at trial. The purpose of this brief is to summarize the background on the applicable substantive criminal law, as well as to address certain legal issues that may arise at trial. Security Aviation has also filed several pretrial motions in limine contemporaneously with this trial brief.

## I.   Background

This Court dismissed Count Three of the indictment on May 4, 2006. After that dismissal, the indictment charges Security Aviation with one count of possession and receipt of unregistered destructive devices in violation of 26 U.S.C. § 5861(d) and one count of unlawful transportation of destructive devices in violation of 18 U.S.C. § 922(a)(4) and § 18 U.S.C. § 924(a)(1)(B). The indictment alleges that these statutes were violated because Security Aviation knowingly ordered and purchased two 57-mm UB-16-57U rocket pod launchers and then stored those launchers at Security Aviation's Anchorage and Palmer hangars.

## II.   Destructive Device

As a threshold matter, if the rocket pod launchers are not destructive devices as defined by 26 U.S.C. § 5845(f) and 18 U.S.C. § 921(a)(4), then Security Aviation cannot have committed either of the two crimes with which the indictment charges it. The term "destructive device" is essentially the same under the two statutes.[1]   *United States v. United States v. Posnjak*, 457 F.2d 1110, 1115 (2d Cir. 1972) (stating that the two

---

[1]  26 U.S.C. § 5845(f)(2) "[A]ny type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes."

18 U.S.C. § 921(a)(4)(B): "[A]ny type of weapon (other than a shotgun or a shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes) by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter."

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

SECURITY AVIATION, INC.'S TRIAL BRIEF                    UNITED STATES OF AMERICA V.
                                                        ROBERT F. KANE and SECURITY AVIATION
Page 2 of 15                                             Case No 3:06-CR-00022-JWS-JDR-2

statutes' definition of destructive devices is "identical"). The only statutory sections that could possibly apply in this case are 26 U.S.C. § 5845(f)(2) and 18 U.S.C. § 921(a)(4)(B).[2] Under the statutes, three basic elements must be met for something to be a destructive device. First, it must be a weapon. Both statutes define a destructive device as a weapon. Second, the weapon must be able to expel a projectile by the action of an explosion or propellant or be able to be readily converted to do so. Third, the barrel of the weapon must have a bore greater than one-half inch in diameter. This brief discusses the statutory meaning of the terms "weapon" and "readily converted." The government's ability to prove that the rocket pods are weapons and could be readily converted to expel a projectile will be an issue at trial.

### A.  Weapon

A component or part of a weapon is not itself a weapon. Common sense dictates that a revolver is a weapon, but that a revolver cylinder is not. The same logic applies to the different weaponry technology of rockets. For example, a detached barrel of a bazooka is entirely harmless. One could put rockets in a detached bazooka barrel and the rockets would do nothing, but sit peacefully in the barrel. Imagine, however, someone who was foolhardy enough to prop a bazooka barrel in the bed of his pickup truck, attach a wire and battery to a rocket in the cylinder, close his eyes, cover his ears and hope for the best. Because the rocket contains its own igniter that only requires an electrical

---

[2] The government conceded that this was the only available statutory definition in its opposition to Kane's Motion to Dismiss Indictment filed at Docket 89.

SECURITY AVIATION, INC.'S TRIAL BRIEF                           UNITED STATES OF AMERICA V.
                                                                ROBERT F. KANE and SECURITY AVIATION
Page 3 of 15                                                    Case No 3:06-CR-00022-JWS-JDR-2

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

charge, the bazooka barrel would most likely expel a projectile, just as any appropriately sized pipe would. It is the statutory requirement that the device be a weapon that prevents the bazooka barrel from being an illegal destructive device. The statutory language and the applicable case law mandate that a component of a weapon is not a weapon under the statutes.

To interpret the statutory definition of a destructive device differently would render another section of the two statutes meaningless. Both 26 U.S.C. § 5845(f) and 18 U.S.C. § 921(a) include sections that prohibit the possession of parts that could be assembled into a destructive device.[3] But it is only illegal to possess the necessary parts that could be assembled into a destructive device if one has all of the necessary parts. Under 26 U.S.C. § 5845(f)(3), "[s]ince 'parts' aren't necessarily a weapon, the statute requires intent to use them as a weapon." *United States v. Ruiz*, 73 F.3d 949, 952 (9th Cir. 1996). Moreover, "[a] defendant must possess *every* essential part necessary to construct a destructive device." *United States v. Blackburn*, 940 F.2d 107, 110 (4th Cir. 1991) (emphasis in original). A grenade without the gunpowder necessary to arm the grenade is not a destructive device under § 5845(f)(3). *United States v. Malone*, 546 F.2d 1182, 1184 (5th Cir. 1977) (holding that "the defendant cannot be found guilty of the

---

[3] 26 U.S.C. § 5845(f)(3) states: "[A]ny combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled."

18 U.S.C. § 921(a)(4)(C) states: "[A]ny combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive device may be readily assembled."

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

offenses charged because he did not have in his possession all of the component parts from which a destructive device might be readily assembled"). It would eviscerate established circuit law to define the term "weapon" under § 5845(f)(2) to include a component or part of a weapon, when a single component or part of a weapon does not create criminal liability under § 5845(f)(3), which is the statutory section that explicitly criminalizes possession of parts or components of weapons. The statute clearly does not intend to criminalize possession of components of weapons under § 5845(f)(2). If a grenade shell without the gun powder is not a destructive device under § 5845(f)(3), *see*, *Malone*, 546 F.2d at 1184, then a component or part of a weapon is not a weapon under § 5845(f)(2).

The term "weapon" has independent significant meaning and refers to a complete weapon, not an individual part. Of course, a weapon does not have to be completely functioning to qualify as a destructive device under 5845(f)(2). For instance, in *Rushcamp*, the handheld rocket launcher could not expel a projectile because of some electrical failure, but the Sixth Circuit found that the launcher could be readily converted to expel a projectile. *Rushcamp*, 526 F.2d at 1381. The device in *Rushcamp* was clearly a complete weapon covered by the statute. It had "a trigger and a firing device, electrical circuitry, a blast shield, a sighting device, and a shoulder and hand rest." *Id*. at 1382. The minor electrical failure did not make the *Rushcamp* bazooka a non-weapon. A part or component of the *Rushcamp* rocket launcher, however, would not have been a

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

SECURITY AVIATION, INC.'S TRIAL BRIEF                    UNITED STATES OF AMERICA V.
                                                         ROBERT F. KANE and SECURITY AVIATION
Page 5 of 15                                             Case No 3:06-CR-00022-JWS-JDR-2

weapon.[4] For instance, the blast shield or sighting device are not weapons under the statutes. The barrel of the bazooka would also not be a weapon. Without the trigger, firing device, blast shield, sighting device, and shoulder and hand rest, the barrel would be an innocuous component of a weapon, no different from any other pipe.

A careful review of the case law shows that under the statutes, a component or part of a weapon is not a weapon under § 5845(f)(2), and therefore cannot be a destructive device. Indeed, to interpret the statutory definition of "weapon" otherwise would violate the long established doctrine that statutory provision must be interpreted as it "relates to the 'language and design of the statute as a whole.'" *United States. v. Leon H,* 365 F.3d 750, 753 (9th Cir. 2004) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). The rule of lenity also requires interpreting the statutory definition so that a part of a weapon is not a weapon. *United States v. Iverson*, 162 F.3d 1015, 1025 (9th Cir. 1998) ( holding that "when a criminal statute is ambiguous," it must be interpreted "in favor of the defendant"). The government must prove that the objects at issue in this case are weapons. If the government only proves that the objects are a part or component of a weapon, then they have not proven that the objects are destructive devices under the relevant statutes. The definition of the statutory "weapon" is not only relevant as to how the jury is instructed, but also whether the case should even go to the jury. If the

---

[4] This is consistent with the Sixth Circuit's holding in *Rushcamp* that while the bazooka at issue was a weapon, " [t]he statutes involved do not purport to regulate all materials or devices which could prove harmful, such as a 3.5 inch pipe." *Rushcamp*, 526 F.2d at 1382.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

government fails to prove that the pods are weapons, then, as a matter of law, a judgment of acquittal must be entered.

### B. Readily Converted

Even if the government is able to prove that the pods are weapons, and not just components of a weapon, the government will still have to prove that the pods could be readily converted to expel a projectile by action of an explosion or propellant. It will be undisputed at trial that the pods were and are incapable of expelling a projectile. A rocket could be placed in any tube of the pods and no button, triggering mechanism, or switch could be pressed to expel the rocket. Instead, the rocket would just sit peacefully inside the tube. The government must prove, rather, that the pods could be "readily converted" to expel a projectile.

The critical statutory term is "readily." In *United States v. Seven Miscellaneous Firearms*, 504 F. Supp. 565 (D. Col. 1980), the court defined "readily" in the context of the statutory phrase "readily restored to shoot automatically," which is 26 U.S.C. § 5845(b). The Court noted the absence of any statutory definition of "readily" and applied the normal and usual meaning applied to the word, stating that, "'Readily,' according to Webster, means: without hesitation; without delay; quickly; without difficulty." *Id.* at 573. The court went on to note that converting the devices at issue so they could fire would be costly and time consuming, and so they could not be "readily" restored to shoot. *Id.*

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

SECURITY AVIATION, INC.'S TRIAL BRIEF

Page 7 of 15

UNITED STATES OF AMERICA V. ROBERT F. KANE and SECURITY AVIATION
Case No 3:06-CR-00022-JWS-JDR-2

Importantly, the court also rejected the government's argument that the weapons could be readily converted by adding additional parts. The Court noted that the parts necessary to "convert" the devices according to the government caliber were extremely rare and were not accessible to someone wishing to covert the weapons.[5] Because the necessary parts were not available, the devices at issue were not readily restorable or readily converted.

In *United States v. Aguilar-Espinsoa* 57 F.Supp.2d. 1359 (M.D. Fla), the district court also defined the terms "readily restored." The Court noted:

> [T]he phrase "readily restored" lacks reassuring precision, but I assume "readily restoration" means a less than arduous assembly of manageable and available parts by a combination of (1) the ability of a reasonably skilled and informed but not necessarily expert or artistic worker and (2) tools commonly understood by and commonly available to such workers, including for example, Allen wrenches, filed, jeweler's screw drivers, and the like but excluding for example, the resources available to a master machinist with a modern and well-equipped lathe.
>
> The intent of the ready restoration clause is, at least, to statutorily include a weapon that is inoperable as a fully automatic weapon on the occasion of the unlawful possession but is capable of renewed automatic operation by the purposeful deployment of a practicable effort.

*Id.* at 1362.

Finally, in *United States v. 16.79 Molso Italian .22 Caliber Winlee Derringer Convertible Starter Guns,* 443 F.2d 463 (2d Cir. 1971), the Second Circuit held that

---

[5] Indeed, the government's expert used a piece from a Bureau of Alcohol and Tobacco and Firearms *museum* to convert the device so that it was operable. *Seven Miscellaneous Firearms*, 503 F. Supp. at 573-74.

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

starter guns which were "readily convertible" to fire live ammunition within three to twelve minutes were dangerous weapons subject to forfeiture. The short time necessary to convert the weapons was central to the court's finding that the weapons were "readily convertible."

Courts have consistently defined the statutory term "readily" to mean "easily and quickly." The term "readily" also requires that the parts and tools necessary to complete the conversion must be available. It is not sufficient that it is theoretically possible to acquire the necessary part, as in *Seven Miscellaneous Firearms*, where the necessary parts were in a government museum, but otherwise not available. Instead, the defendant must have access to the necessary part. It is also not sufficient that the conversion is feasibly possible. If an expert is necessary to convert the weapon it is not readily convertible. If specialized tools are necessary to convert the weapon, it also is not readily converted. In order to be readily converted, a weapon must be easily and quickly converted, which means the conversion can be accomplished by a reasonably skilled individual with available parts and simple tools.

### III.  Vagueness

The interpretation of the statutory definition of "destructive device" also raises constitutional issues. The Fifth and Fourteenth Amendments bar enforcement of a statute which forbids an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. *United States v. Lanier*, 520 U.S.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

SECURITY AVIATION, INC.'S TRIAL BRIEF

Page 9 of 15

UNITED STATES OF AMERICA V.
ROBERT F. KANE and SECURITY AVIATION
Case No 3:06-CR-00022-JWS-JDR-2

259, 266 (1997); *see, also, United States. v.* Gallagher, 99 F.3d 329, 334 (9th Cir. 1996) (holding that "a criminal statute is unconstitutionally vague when it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden").

Vagueness challenges outside of the First Amendment context, are limited to as applied challenges. *Gallagher,* 99 F.3d at 334. Here, the evidence will show that the pods are simply components of a weapon system and that the pods are incapable of expelling a projectile. If the terms "weapon" and "readily converted" are not narrowly construed as urged in this brief, the statute as applied to Security Aviation is unconstitutionally vague. There is no way that Security Aviation could have contemplated that the conduct of which it is accused was prohibited. The statute could not alert Security Aviation that purchasing and possessing an inoperative component of a weapon on the internet that was advertised as demilitarized was illegal. Nor could it have contemplated that although none of the parts necessary to convert the pods to expel a projectile are accessible, the possession of the pods was forbidden because they could be "readily converted" to expel a projectile. Therefore, Security Aviation's interpretation of the terms of the applicable statute is not only supported by the language of the statute and applicable case law, but also required to avoid an unconstitutional result. *See, United States. v. Buckland*, 289 F.3d 558, 564 (9th Cir. 2002) (holding that "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality") (quoting *Hooper v. California,* 155 U.S. 648, 657 (1895); *see, also, Miller v. French,* 530

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

SECURITY AVIATION, INC.'S TRIAL BRIEF                    UNITED STATES OF AMERICA V.
                                                         ROBERT F. KANE and SECURITY AVIATION
Page 10 of 15                                            Case No 3:06-CR-00022-JWS-JDR-2

U.S. 327, 336 (2000) (counseling courts to avoid "constitutionally doubtful constructions"). Because this Court is obligated to construe the statute to avoid constitutional problems, the definition of "destructive device" and the terms "weapon" and "readily converted" must be interpreted narrowly to prevent Security Aviation from being unconstitutionally convicted . *See, I.N.S. v. St. Cyr,* 533 U.S. 289, 299-300 (2001).

### IV. Mens Rea Requirement

An essential element of the two offenses Security Aviation has been charged with is that Security Aviation knew that the "rocket pods" possessed the characteristics that bring the pods under the National Firearms Act. In *Staples v. United States*, 511 U.S. 600 (1994), the Supreme Court held in order to convict a defendant of possession of an unregistered firearm, under 26 U.S.C. § 5861(d), the government must prove beyond a reasonable doubt that the defendant knew of the features of the weapon that brought the weapon within the scope of the act. *Id.* at 619. In *Staples*, the defendant had testified that he was ignorant of the weapon's capability to fire automatically. The Supreme Court reversed his conviction on the ground that § 5861(d) required proof of knowledge on the part of the accused that the firearm comes within the scope of the Act. *Id.*

The Ninth Circuit, in *United States v. Gergen*, 172 F.3d 719 (9th Cir. 1999), held that the *mens rea* requirement is an essential element of a 26 U.S.C. § 5861(d) offense. Id. at 724. In *Gergen*, the Ninth Circuit reversed a conviction because a supplemental jury instruction stated that the government was not required to show that the defendant

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

specifically knew of a gun's (sawed off shotgun's) characteristics. *Id.* While the government does not have to prove that Security Aviation knew it had to register the pods, it must prove that Security Aviation knew of the features of the pods that would bring them within the Act.[6] The government will therefore have to prove that Security Aviation knew that the pods could expel a projectile by action of an explosion or propellant or could be readily converted to do so. Given that the evidence will be conclusive that the pods cannot expel a projectile, *Gergen* mandates a jury instruction that Security Aviation knew that the pods could be readily converted. Security Aviation could only have known that the pods could be readily converted if it knew how they could be readily converted. The jury instruction must require a finding by the jury that Security Aviation knew how to readily convert the pods to expel a projectile.

## V.   Corporate Liability

Security Aviation is a corporation. A corporation is a legal entity and can act only through its agents. In order for a corporation to be guilty of a crime, the essential elements of a crime must have been committed by an agent of the corporation. In addition, the acts of the agent had to (1) be committed within the course and scope of the

---

[6] The circuit courts are in agreement that *mens rea* is an essential element of crime under § 5861(d). *See e.g., United States v. Mains*, 33 F.3d 1222, 1229 (10th Cir. 1994) (Jury must be instructed that defendant knew the particular circumstances, which made his sawed off shotgun a statutory firearm); *United States v. Owens*, 103 F.3d 953, 956 (11th Cir. 1997) (while the government does not have to prove that the defendant knew that the possession was illegal, the government did have to prove that the defendant knew that the he possessed something that had features that brought it within the scope of the Act.)

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

SECURITY AVIATION, INC.'S TRIAL BRIEF            UNITED STATES OF AMERICA V.
                                                 ROBERT F. KANE and SECURITY AVIATION
Page 12 of 15                                    Case No 3:06-CR-00022-JWS-JDR-2

agent's employment and (2) be committed with the intent to benefit the corporation. See, United States v. Richmond, 700 F.2d 1183, 1195 n. 7 (8th Cir.1983) (citing United States v. Cincotta, 689 F.2d 238 (1st Cir. 1982), United States v. Demauro, 581 F.2d 50, 53 (2d Cir.1978); see, also, New York Central & Hudson R.R. v. United States, 212 U.S. 481, 493-95, (1909); Egan v. United States, 137 F.2d 369, 379 (8th Cir. 1943), United States v. Beusch, 596 F.2d 871, 877-78 (9th Cir.1979); United States v. Hilton Hotels Corporation, 467 F.2d 1000, 1004-07 (9th Cir.1972). As discussed above, knowledge of the features of the pods that make it a destructive device is an essential element of the crime. Knowledge of an agent of a corporation can only be attributed to a corporation when the knowledge was obtained by the agent acting in the course and scope of his employment and for the benefit of the corporation. *United States v. Route 2, box 472, 136 Acres More or Less,* 60 F.3d 1523, 1527 (11th Cir. 1995) (holding that knowledge "may be attributed to a corporation only when the knowledge was obtained by an agent acting within the scope of his or her employment and for the benefit of the corporation"); *see, also, Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 446 (7th Cir.1994) (holding that in the context of sexual harassment "[k]nowledge of the agent is imputed to the corporate principal only if the agent receives the knowledge while acting within the scope of the agent's authority and when the knowledge concerns a matter within the scope of that authority"); *see, also, Steere Tank Lines, Inc. v. United States*, 330 F.2d 719, 722-24 (5th Cir.1963) (holding that the knowledge obtained by corporate

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

SECURITY AVIATION, INC.'S TRIAL BRIEF            UNITED STATES OF AMERICA V.
                                                 ROBERT F. KANE and SECURITY AVIATION
Page 13 of 15                                    Case No 3:06-CR-00022-JWS-JDR-2

employees acting within the scope of their employment and for the benefit of the corporation is imputed to the corporation). Therefore, in order for Security Aviation to be convicted of a crime for the knowing act of one of its agents, the agent must have acquired that knowledge in the course of his employment and for the benefit of the company.

DATED this 8th day of May, 2006, at Anchorage, Alaska.

DORSEY & WHITNEY LLP

By: /s/ Robert C. Bundy
Robert C. Bundy, ABA #7206021
Allen F. Clendaniel, ABA #0411084
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Suite 600
Anchorage, AK 99501-5907
(907) 276-4557
bundy.robert@dorsey.com
clendaniel.allen@dorsey.com

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

SECURITY AVIATION, INC.'S TRIAL BRIEF            UNITED STATES OF AMERICA V.
                                                 ROBERT F. KANE and SECURITY AVIATION
Page 14 of 15                                    Case No 3:06-CR-00022-JWS-JDR-2


CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 8th day of May, 2006, a true and correct copy of this document was served on:

| | |
|---|---|
| James N. Barkeley<br>Steven Skrocki<br>Assistant United States Attorney<br>Federal Building  U.S. Courthouse<br>222 W. 7th  Ave. #9, Rm 253<br>Anchorage, Alaska  99513-7567 | Paul D. Stockler<br>1309 W. 16th Avenue<br>Anchorage, Alaska  99501 |
| Kevin Fitzgerald<br>Ingaldson, Maassen & Fitzgerald<br>813 West 3rd Avenue<br>Anchorage, Alaska  99501 | James L. Kee<br>Kee, Archer & Herberger, P.A.<br>1102 Maple Street<br>Duncan, Oklahoma  73533 |

by electronic means through the ECF system as indicated on the Notice of Electronic Filing, or if not confirmed by ECF, by first class regular mail.

 By:     /s/ Robert C. Bundy
        Robert C. Bundy, ABA #7206021
        Allen F. Clendaniel, ABA #0411084
        Dorsey & Whitney, LLP

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

SECURITY AVIATION, INC.'S TRIAL BRIEF                    UNITED STATES OF AMERICA V.
                                                         ROBERT F. KANE and SECURITY AVIATION
Page 15 of 15                                            Case No 3:06-CR-00022-JWS-JDR-2
4814-1408-7937\1 5/8/2006 3:31 PM