U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Firearms Technology Branch**
**Report of Technical Examination**



244 Needy Road
Martinsburg, WV 25401

Phone: 304-260-1699
Fax: 304-260-1701

To:

Special Agent Peter McCole
Bureau of Alcohol, Tobacco, Firearms and Explosives
222 West 7th Avenue
Room 547, Box 39
Anchorage, Alaska 99513
(907) 271-5701

Date:

UI#: 787010-06-0400

RE:

FTB#: 2006-226-ELG

**Date Exhibits Received:**

**Delivered By:**

**Type of Examination Requested:**

Test, Examination, Classification

**Exhibits:**

1. Rocket Pod Launcher, Model UB-16-57, 57mm diameter, identifying number 462017.
2. Rocket Pod Launcher, Model UB-16-57, 57mm diameter, identifying number 454079.

**Pertinent Authority:**

The Gun Control Act of 1968 (GCA), as amended, defines "firearm" to mean, in part, "...*any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive...the frame or receiver of any such weapon...[and]...any firearm muffler or silencer; or any destructive device.* (See 18 U.S.C. § 921(a) (3).)

The National Firearms Act (NFA), 26 U.S.C. § 5845(a), defines "firearm" as—

"...*(1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in 18 U.S.C., section 921); and (8) a destructive device. The term 'firearm' shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.*"

ATF Form 3311.2
Revised June 2005

Exhibit A
Page 1 of 4

Special Agent Peter McCole

787010-06-0400
2006-226-ELG
Page 02

The NFA, 26 U.S.C. § 5845(f), defines "a destructive device" as follows:

*(1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellant charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled. The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 4684(2), 4685, or 4686 of title 10 of the United States Code; or any other device which the Secretary finds is not likely to be used as a weapon, or is an antique or is a rifle which the owner intends to use solely for sporting purposes.*

Further, 27 CFR Section 479.24 states that—

*"... the Director shall determine in accordance with 26 U.S.C. 5845(f), whether a device is excluded from the definition of a destructive device. A person who desires to obtain a determination under that provision of law for any device which he believes is not likely to be used as a weapon shall submit a written request, in triplicate, for a ruling thereon to the Director. Each such request shall be executed under the penalties of perjury and contain a complete and accurate description of the device, the name and address of the manufacturer or importer thereof, the purpose of and use for which it is intended, and such photographs, diagrams, or drawings as may be necessary to enable the Director to make his determination. The Director may require the submission to him, of a sample of such device for examination and evaluation. If the submission of such device is impracticable, the person requesting the ruling shall so advise the Director and designate the place where the device will be available for examination and evaluation."*

As indicated in 26 U.S.C. Chapter 53,

*"...no firearm shall be imported or brought into the United States or any territory under its control or jurisdiction unless the importer establishes, under regulations as may be prescribed by the Secretary, that the firearm to be imported or brought in is - (1) being imported or brought in for the use of the United States or any department, independent establishment, or agency thereof or any State or possession or any political subdivision thereof; or (2) being imported or brought in for scientific or research purposes; or (3) being imported or brought in solely for testing or use as a model by a registered manufacturer or solely for use as a sample by a registered importer or registered dealer; except that, the Secretary may permit the conditional importation or bringing in of a firearm for examination and testing in connection with classifying the firearm."*

Exhibit A
Page 2 of 4

ATF Form 3311.2
Revised June 2005

Special Agent Peter McCole

787010-06-0400
2006-226-ELG
Page 03

### Findings:

On February 2, 2006, I examined two UB-16-57 rocket launchers (referenced as Exhibits 1 and 2) at the Security Aviation, Incorporated, hanger located in Palmer, Alaska.

Exhibits 1 and 2 are each a model UB-16-57 rocket pod launcher produced for the former Soviet Union and Warsaw Pact (Bulgaria, Czechoslovakia, German Democratic, Hungary, Poland, Romania,) armed forces. Each of the rocket pod launchers had 16 launch tubes that are designed to carry S-5 folding fin aircraft rocket (FFAR)-type rockets. The rocket pod launchers are designed to be attached to universal wing pylons by two mechanical suspension yokes and are connected electrically by a plug and socket located on the top of each launcher. Additionally, each of the rocket launchers was marked with "Cyrillic" writing.

My examination of the physical characteristics of Exhibits 1 and 2 disclosed that each of the 16 launch tubes (barrels) had *a bore diameter greater than ½ inch*. I further inspected the interior of each launch tube, finding that *none had been altered* by having a hole equal to the diameter of the bore cut through one side of the launch tube on a 90-degree angle to the axis of the bore. Additionally, I found that *none of the launch tubes had an obstruction welded into the tubes* to preclude the introduction of a rocket (round of ammunition). The launch tubes were currently functional and had no visible modifications.

I performed the tests described immediately below to demonstrate that an electrical signal originating from the electronics within the aircraft could flow through the rocket pod launcher via the plug/socket connector located at the top of the launcher to the receptacle connectors located at the rear of the launcher. The result, ultimately, would be the delivery of an electrical signal through the electrical wires of loaded S-5 rockets, resulting in the rockets' ignition and launching.

On February 18, 2006, I conducted electrical continuity tests on Exhibits 1 and 2 to determine whether the electrical wiring within the two rocket pod launchers had a continuous electrical path for an electrical signal to flow. I performed these tests by checking the wiring within each rocket launcher to ensure that it was continuous, not broken, and could carry an electrical signal. I tested the electrical pins within the plug/socket connector located at the top of each rocket pod launcher to the corresponding electrical pin socket receptacle at the rear of each launcher, where the S-5 rockets plugs into each. I also tested the continuity of the plug/socket connecter located on the bottom rear of the launcher to the corresponding electrical pin socket at the rear of each launcher. As a result of this testing, I was able to conclude that the electrical wiring within each rocket pod launcher had a continuous electrical path for carrying voltage through the launcher.

In summary, based on the above test and examination, I determined that the rocket pod launchers were electrically and mechanically functional and that each could be readily converted to expel a projectile by the action of an explosive or other propellant.

Exhibit _A_
Page _3_ of _4_

ATF Form    3311.2
Revised June 2005

Special Agent Peter McCole

787010-06-0400
2006-226-ELG
Page 04

References/Research:

1. Conversations with personnel from Department of Air Force, Air Intelligence Agency.
2. L-39 maintenance manuals.
3. Jane's *Aircraft Recognition Guide*.
4. Jane's *Air-Launched Weapons*.
5. Jane's official Web site, www.janes.com.
6. Military Parade publication, *Russia's Arms*.

Conclusions:

Based upon my experience, knowledge, research, and testing, I find that Exhibits 1 and 2 are each a "firearm" as defined in 18 U.S.C. 921(a)(3) and 26 U.S.C. 5845(a)(8) and, further, that Exhibits 1 and 2 are each a "destructive device" as defined in 26 U.S.C. 5845(f).

Approved by:

Earl L. Griffith, II
Firearms Enforcement Officer

Sterling Nixon
Chief, Firearms Technology Branch

Exhibit A
Page 4 of 4

ATF Form 3311.2
Revised June 2005