**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA | **3-06-cr-00022-JWS-JDR** |
| Plaintiff, | |
| vs. | **FINAL RECOMMENDATION ON SECURITY AVIATION'S MOTION TO SUPPRESS EVIDENCE OF SEARCH AT PALMER HANGAR** |
| ROBERT F. KANE, a.k.a. Commander Kane, and SECURITY AVIATION, INC., | |
| Defendants. | (Docket Entry 71) |

The parties have timely filed objections to the recommendation addressing defendant Security Aviation, Inc.'s, motion to suppress evidence of search at Palmer hangar. *See*, United States' response, docket entry 183, and Security Aviation's objections at docket entry 186. Security Aviation submitted a response to the government's "objections," docket entry 193. The government

submitted a reply to Security Aviation's objections, Docket entry 196.  Upon due consideration of these pleadings, the magistrate judge declines to modify his recommendation.  In response to the objections, a few comments regarding the issue of validity of the consent search follow.

Security Aviation argues that Anthony did not consent to Campe's search of the hangar.   Anthony consented to allow Berens and his companions to enter the hangar to retrieve the fuel tanks, batteries, and rocket pod covers.  The consent was not limited to John Berens only.   The identity of Campe or the ulterior motive of Berens was never raised at the hangar.  Essentially, Security Aviation implies that Berens and Campe were required by law to make a full disclosure to Anthony regarding their interest in the rocket pods.  The law does not so require, and a logical extension of Security Aviation's argument would mean that the government could never infiltrate a criminal organization or use an informant to make an undercover drug buy without disclosing their police investigative purpose.  That is not the law.  The Fourth Amendment is directed to unreasonable searches and seizures.  As discussed in the recommendation, courts have balanced the interests of the government with that of the privacy and of individuals.

Anthony unlocked the hangar and gave the keys to Berens before leaving the site. The evidence supports the magistrate judge's findings that Anthony consented not just to Campe individually entering the hangar, but to those with him,

for the purpose of removing the items. Even with those people (Campe not participating), it took several trips to retrieve the items. Had Anthony been concerned about only Berens entering the hangar, he would either have questioned Berens or the individuals or raised the issue about how many people were going in to repossess the items. Preponderance of the evidence indicates that Anthony consented and provided access to those with Campe to enter the hangar.

The second point in Security Aviation's objections is the argument that Berens knew that Anthony could not consent to entry into the Palmer hangar. The evidence does not so indicate. To access to the Security hangar on January 21, 2006, Berens called Bob Anthony. Tr. of evidentiary hearing, p. 20. When he made the request Berens did not know whether Anthony would let him in the hangar. Tr. 22. Anthony was clearly aware of Mr. Campe's presence.

Berens indicated that Anthony unlocked the hangar and opened it "and let us in." Tr. 28. Anthony was present when Berens, Campe, Don Kirlin, and Michael Vales stepped inside the hangar. The drop tanks were carried out by Berens, Kirlin, and Vales. Tr. 29, 82. The batteries were carried out by the same three individuals. *Id.* There were eight drop tanks, 2 batteries, and two or three gun pod covers. Tr. 83.

Berens testified that he did not know what Anthony's position was at that time. Tr. 30. To avoid confrontation Berens chose not to notify Security

Aviation in advance of his coming to Anchorage in January 2006 to repossess the planes. Tr. 51. Berens had no reason to believe that Anthony was part of the management team at Security Aviation, but he had no reason to conclude that Anthony could not provide lawful access to the hangar to allow retrieval of the items matching the repossessed planes. Anthony stepped into the hangar for a couple of minutes. Tr. 69, 76. That Berens did not ask Anthony whether he would let them in to search the building is inconsequential because there was no search of the building. Tr. 76.

It was Anthony's understanding that he could let anyone in and out of the hangar. Tr. 98. Anthony testified that he did not remember being specifically told by anyone at Security Aviation that he could not let anyone (not an employee of Security Aviation) in the hangar. Tr. 111-112. Anthony believed that he had the right to let the individuals into the hangar. Tr. 113.

Wherefore the motion to suppress evidence of the search at the Palmer hangar lacks merit. The motion should be denied. The motion is now referred to the assigned district judge for his determination.

DATED this 9th day of May, 2006, at Anchorage, Alaska.

 /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge