DEBORAH M. SMITH
Acting United States Attorney

STEVEN E. SKROCKI
JAMES BARKELEY
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: steven.skrocki@usdoj.gov
james.barkeley@usdoj.gov

Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:06-cr-022-JWS |
| | ) | |
| Plaintiff, | ) | **RESPONSE OF THE UNITED** |
| | ) | **STATES TO SECURITY** |
| vs. | ) | **AVIATION'S MOTION IN** |
| | ) | **LIMINE TO REQUIRE THE** |
| ROBERT F. KANE, | ) | **UNITED STATES TO GRANT** |
| a/k/a "COMMANDER KANE," and | ) | **USE IMMUNITY TO** |
| SECURITY AVIATION, INC., | ) | **DEFENSE WITNESSES** |
| | ) | |
| Defendants. | ) | |
| | ) | |

The United States files with the court a Response to Security Aviation's Motion in Limine to Require the United States to Grant Use Immunity to Defense Witnesses. As of this writing, the United States informs the court that it will immunize government witness James Mendenhall for his testimony at trial. Pursuant to the defense motion, that leaves only for consideration defense witness Allen Smith, whom the government does not intend to call. On that note, Security Aviation again distorts the record in this case in attempting to paint a picture, without evidence, of affirmative action of the part of the United States to keep Mr. Smith off the stand. Mr. Smith has legitimate and viable 5th Amendment issues at stake with regard to prosecution in this district and the District of Pennsylvania. Moreover, his testimony regarding sale is not relevant to the charges of possession, transportation and conspiracy. The motion must be denied.

**INTRODUCTION**

Security Aviation resorts to alleging, without proof, that the United States is engaged in prosecutorial misconduct. This allegation is made on speculation by counsel for Security Aviation that the government has threatened proseuction of Mr. Smith unless he testified in the government's favor as a mechanism to keep him off the stand. In fact, quite the opposition is true. The government informed Mr. Smith that he was facing prosecution in this district and others given his statements in a proffer session several months ago. Security Aviation's

supposition is patently false as established by the government's letter to Mr. Smith indicating the government's intent to charge him–a letter not in any way connected to trial testimony. Given the failure to prove misconduct, or relevance, Security Aviation's motion fails. Additionally, as James Mendenhall will testify for the United States his testimony will accordingly moot the remainder of the defense motion. The motion must be denied.

**FACTS**

As to defendant Smith the story is more straightforward than Security Aviation lets on. Allen Smith was interviewed pursuant to an immunized proffer session in mid-March, 2006. Mr. Mendenhall was also immunized pursuant to a proffer session shortly thereafter. Given the information provided during the proffers, and keeping in line with the government's discovery policy the reports of investigation as to both men were provided to defense counsel well in advance of normal discovery procedures. On March 30, 2006 the United States provided Security Aviation with Mr. Smith's 302 report of interview which provided significant details with regard to the information provided by Mr. Smith during an immunized proffer session to the United States in March, 2006.

Naturally, after the proffer session, the government's investigation of the Security Aviation/Kane matter continued. On March 31, 2006, the United States

followed the 302 discovery with a phone conversation informing counsel for Security Aviation of the new discovery with regard to another set of pods that Smith was going to reassemble for the company and that further discovery would be provided that weekend.  Security Aviation then states that at the end of the phone conversation government counsel indicated that "Mr. Smith's situation has worsened" as was the case.  Exhibit 1 of the correspondence to counsel for Mr. Smith states that for the new information came from the investigation the rocket launchers were intact and not in any way demilitarized.  On April 13, 2006, the United States corresponded with counsel for Smith and informed him of the decision to charge him with various violations of federal law both in the District of Alaska and Pennsylvania.

As of this writing, Mr. Smith has elected not to cooperate with the government and the matter is under consideration by the Acting United States Attorney and Federal Bureau of Investigation in Pennsylvania.

### SECURITY AVIATION'S MOTION  CANNOT MEET THE TWO-PRONG TEST OF *WESTERDAHL*

In determining whether the court should compel the government to immunize a witness for trial the Ninth Circuit has developed a two-part test.  As stated in *United States v. Westerdahl*, 945 F.2d 1083, 1085 (9th Cir.1991)

> In order to make out a claim for prosecutorial misconduct, a defendant must show that the evidence sought from the nonimmunized witness was relevant and that the government distorted the judicial fact-finding process by denying immunity to the potential witness. See Jeffers v. Ricketts, 832 F.2d 476, 479 (9th Cir.1987), rev'd on other grounds, 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); Lord, 711 F.2d at 891. If a defendant makes an "unrebutted prima facie showing of prosecutorial misconduct that could have prevented a defense witness from giving relevant testimony," we will remand the case to the district court to determine at an evidentiary hearing whether the government intentionally distorted the fact-finding process. Id.

Security Aviation's motion loses on both counts.

As to the first prong, the information sought to be elicited by Security Aviation with regard to Smith is totally irrelevant to the charges of conspiracy, possession and transportation. The fact of the matter is what is relevant is not what Smith warranted the launchers to be, but the condition of the launchers themselves. As indicated by the government's letter to Smith, the was nothing demilitarized about the launchers at all. The true crux of the case lies with what occurred after Security Aviation received the pods and the four months in between the time of their arrival and eventual seizure at the Palmer Hangar. Smith's eBay ad will most likely come in under Mendenhall's testimony, in fact the government will move for its admission in its case-in-chief. While not directly relevant overall, it will provide, along with Mendenhall's testimony the context with regard to the demilitarization fallacy of the rocket launchers.

The true basis of Security Aviation's motion however lies in the second part of the Westerdahl test, that being that the government distorted the fact-finding process by denying immunity to the potential witnesses.

In its haste to clothe the United States in the cloak of misconduct, Security Aviation that the Assistant United States Attorneys assigned to this case intentionally sent Smith a letter for the very purpose of preventing his testimony. That is not the case.

In fact, the "threatening communication" referenced by counsel informed Mr. Smith at the earliest possible instant of the government's decision to charge him with a multitude of violations of federal law due to his actions with regard to Security Aviation. This would include the latter discovery of emails found on Robert Kane's computer which were not provided by him during a proffer session with the United States. This is a far cry from the clear insinuation made by counsel and designed to fit the test that government attorneys sent a threatneing communication to Smith in order to prevent his testimony. Mr. Smith has very real and very legitimate concerns both in the district of Alaska and district of Pennsylvania with regard to these activities concerning the rocket launchers. The fact that he has elected not to cooperate with the government further is his very choice and election based upon the advise of counsel.

This is not the type of situation alluded to the case law where the government conditions charging a defendant unless he cooperates. In this regard, Smith provided a proffer, and the government's further investigation cast a different light on the proffer provided to the point where the government elected, as was its right, to inform Mr. Smith that he faced criminal prosecution.

As the correspondence indicates, there was no mention of testimony in lieu of any charging decisions, nor any linkage. The fact is that the government communicated to Mr. Smith and his counsel that it was intending to prosecute him for a number of violations relating to both his proffer and actions in the district of Pennsylvania with regard to the rocket launchers.

In these situations, "the use of immunized testimony for the prosecution, while denying immunity to a defense witness who would directly contradict that of the government witness(es) distorts the fact finding process." *United States v. Alvarez*, 358 F.3d 1194, 1215 (9th Cir.2004)  This is not what is occurring here. Mr. Mendenhall's testimony will supplant and not in the sligthest contradict that of the immunized witness, Mr. Smith. Accordingly, the motion must be denied. *See, Alvarez*, 358 F.3d at 1216 Nor will there be any conflicting stories. See *Westerdahl*, 945 F.2d at 1086

**The Rocket Documents Are Admissible**

Security Aviation next claims that the "rocket documents" are inadmissable if Smith and Mendenhall are not immunized. That matter, as to Mr. Mendenhall, is remedied by Mr. Mendenhall being immunized. The "rocket documents" have absolutely no connection to Mr. Smith. The government fully expects Mr. Mendenhall to testify with regard to the "rocket documents" thus ameliorating Security Aviation's concerns.

**Non-Adopted FBI 302 Reports are Not Admissible Under Statements Against Penal Interest**

Security Aviation next makes a claim that non-adopted FBI 302 reports are admissible a statements against interest Fed.R.Evid. 804(a). Again, the analysis as to Mr. Mendenhall is moot given he will testify. As to Mr. Smith's report of interview the first issue Security Aviation totally disregards the fact that the statements are not the reports, but the agent testimony. Security Aviation fails to cite to the court one case where a written document or an FBI agent report of investigation is the basis for the statement.

Moreover, the argument fails becuase the statements made were made during proffer sessions with government officials and thus lack the requisite reliability. As stated in United States v. Beydler, 120 F.3d 985 (9th Cir. 1997):

> The district court admitted Strovink's testimony about Rickerd's statement under the exception to the hearsay rule for statements against penal interest, which provides in relevant part:
>
> (b) Hearsay exceptions
> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
> ...
> (3) Statement against interest
>
> A statement which ... at the time of its making ... so far tended to subject [the declarant] to ... criminal liability, ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.
>   Fed.R.Evid. 804(b)(3).

*Beydler* found that Fed.R.Evid. 804(b)(3) provide three prerequisites to admission of a statement: (1) that the declarant be unavailable, (2) that the statement be against his penal interest, and (3) that a reasonable person would not have made the statement unless he believed it to be true. In that case, the court determined that a statement made with an eye towards an agreement with the government did not meet the third prong of the rule. It stated:

In circumstances such as those presented here, we must consider whether the statement was "made with an eye to obtaining a 'deal' with the government." *United States v. Magana-Olvera*, 917 F.2d 401, 408 *988 (9th Cir.1990). Where the "danger of currying favor with the authorities [is] strong enough [we] find an abuse of discretion under Rule 804(b)(3)." Id. (citing *United States v. Monaco*, 735 F.2d 1173, 1177 (9th Cir.1984)). In *Magana-Olvera* we found it an abuse of discretion to admit statements (1) made in custody,

> (2) in an attempt to curry favor from federal authorities, (3) in response to government encouragement and suggestions that the declarant's prison time could be cut in half, and (4) tending to trivialize the declarant's role and pointing to another.  See id. at 409.
>
> The *Magana-Olvera* factors are useful indicia for the analysis of the statement's likely reliability.  In the end, of course, we must determine reliability in light of all of the circumstances of the particular case.  Here, Rickerd made his statement, though not in formal custody, while in a police car in an isolated location.  He did not trivialize his role or try to shift blame but his incentives to cooperate were no less:  he was told by the detective that the police knew of his involvement in the robbery, that it was a very serious crime, that he was facing a very serious penalty in the form of a prison term, that it would be in his best interest to cooperate with the police and that he would be in a lot of trouble if he did not cooperate.  This was an unvarnished invitation to make a deal, coupled with an undisguised threat.  On this record, because there is no basis for finding that a reasonable person in Rickerd's position would not have made the statement unless he believed it to be true, the admission of the statement was an abuse of discretion.

*United States v. Beydler*, 120 F.3d at 988

The case before the court is no different. Both interviews were done under the guise of a possible cooperation agreement with the government.  Under the guidance of Beydler, where the declarant in that case neither minimized nor shifted blame, the court found that one in that position would not have made the statement unless he believed it to be true.  Lastly, the government takes issue with the claim that the statements were made against their interest, for, at the time at least, the declarants thought their possession of the pod did not violate the law.

RESPECTFULLY SUBMITTED this 11th day of May, 2006 at

Anchorage, Alaska.

          DEBORAH M. SMITH
          United States Attorney

          s/ Steven. E. Skrocki
          Assistant U.S. Attorney
          222 West 7th Ave., #9, Rm. 253
          Anchorage, AK 99513-7567
          Phone: (907) 271-5071
          Fax: (907) 271-1500
          E-mail: steven.skrocki@usdoj.gov

          s/ James Barkeley
          Assistant U.S. Attorney
          222 West 7th Ave., #9, Rm. 253
          Anchorage, AK 99513-7567
          Phone: (907) 271-5071
          Fax: (907) 271-1500
          E-mail: james.barkeley@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on May 11th, 2006
a copy of the foregoing was served
electronically on Robert Bundy,
Allen Clendaniel, Kevin Fitzgerald,
James Kee, & Paul Sockler.

s/ Steven E. Skrocki