Robert C. Bundy, ABA #7206021
Allen F. Clendaniel, ABA #0411084
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Suite 600
Anchorage, AK 99501-5907
Telephone:   (907) 276-4557
Facsimile:    (907) 276-4152

Attorneys for SECURITY AVIATION, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>v.<br><br>ROBERT F. KANE, a/k/a "COMMANDER KANE," and SECURITY AVIATION, INC.,<br><br>             Defendants. | Case No. 3:06-CR-00022-JWS-JDR-2<br><br>**OPPOSITION TO MOTION IN LIMINE OF THE UNITED STATES REGARDING RELEVANT DEFENSES** |
|---|---|

Defendant Security Aviation, Inc. ("Security Aviation") hereby responds to the government's motion in limine regarding relevant defenses.[1]

The government appears to ask this Court to issue an order precluding defendants from offering any evidence or eliciting testimony regarding the following topics: (1) the defendants' intended use for the rocket pods, (2) the availability of rockets, or other ammunition, for use with the pods, and (3) the age variant or model of the device. The

---

[1] The government also addressed this issue in its 41-page trial brief. Despite the over length nature of the brief, Security Aviation also responds to the government's additional arguments in its trial brief relevant to the government's motion in limine.

government argues that this evidence is not relevant because it does not pertain to any potential defense to the charged offenses.  Additionally, the government requests an instruction limiting the jury's use of evidence of the L-39's incapacity to operate the rocket pods to the defendants' *mens rea*.

The government's motion relies on an erroneous interpretation of the essential elements of the crimes charged in the indictment.  Specifically, the government completely mischaracterizes what it must prove for the pods at issue to be "destructive devices" under the National Firearms Act.  The government also conveniently ignores the relevance of the evidence it seeks to exclude to the defendants' knowledge that the pods could be readily converted to expel a projectile.  Under the actual legal standard, all of the evidence the government seeks to exclude is clearly relevant.  Accordingly, the government's motion must be denied.

## I.   The Legal Standard.

The government erroneously states that the critical issue at trial is "did Kane and Security Aviation know [sic] that barrel [sic] of the rocket pods had a diameter greater than half an inch, and did they know it was made to fire rockets."[2]  This statement of the legal elements is just flat wrong.  It is entirely irrelevant whether the pods were "made to fire rockets."  The only relevant standard is contained in the applicable statute.  In light of the government's mischaracterization, the statute is worth repeating here.

---

[2] Government's motion at 3.

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

OPPOSITION TO MOTION IN LIMINE OF THE UNITED STATES REGARDING RELEVANT DEFENSES

UNITED STATES OF AMERICA V. ROBERT F. KANE and SECURITY AVIATION

Page 2 of 16                                                                 Case No 3:06-CR-00022-JWS-JDR-2

> The term "destructive device" means … (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter.

26 U.S.C. § 5845(f).

The original design or intent of the manufacturer is entirely irrelevant. If the pods cannot expel a projectile or cannot be readily converted to expel a projectile, they are not a destructive device. Whether they were "made to fire" rockets is not the legal standard. The government's proposed jury instructions also minimize the essential element that the pods be weapons. Security Aviation incorporates by reference the legal authority cited in its trial brief that a part or component of a weapon is not a weapon under the statute.

The government must prove (1) that the pods are weapons, (2) that they can expel a projectile or be readily converted to do so, and (3) that they have a bore greater than ½ inch. If the government fails to prove any one of these elements, no violation of 26 U.S.C. § 5861(d) occurred. But this is just the government's first burden of proof. Even if the government proves the pods are destructive devices, it must also prove that Security Aviation knew of the pods characteristics that brought it under the National Firearms Act. *See Staples v. United States*, 511 U.S. 600, 619 (1994). Therefore, the government must prove that (1) Security Aviation knew the pods were weapons and not simply a component or part of a weapon, (2) that the pods could expel a projectile or be readily converted to do so, and (3) the pods had a bore greater than ½ inch.

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

OPPOSITION TO MOTION IN LIMINE OF THE UNITED STATES REGARDING RELEVANT DEFENSES

UNITED STATES OF AMERICA V. ROBERT F. KANE and SECURITY AVIATION

Page 3 of 16                                              Case No 3:06-CR-00022-JWS-JDR-2

Under the legal standards actually governing this case, all of the evidence and testimony the government wishes to exclude is relevant to the charges at issue and must be admitted.

## II.     Intended Use

Security Aviation does not dispute that its intended peaceful use for the pods is not a defense to the crimes with which it is charged.  Although the government bears the burden of proving knowledge of the statutory elements described above, the government does not have to prove that Security Aviation intended to use the pods to expel projectiles.  But Security Aviation's intended use for the pods is critically important to its knowledge of whether the pods could expel a projectile or be readily converted to do so. That Security Aviation did not intend to use the pods to expel projectiles is directly probative of whether Security Aviation lacked the knowledge that the pods were weapons and that the pods could be readily converted to expel projectiles.

The evidence will show that the pods were purchased by Security Aviation for static ornamental display.  The evidence will also show that the pods are incapable of expelling a projectile.  Finally, the evidence will show that no employee or agent of Security Aviation attempted to obtain rockets or any of the parts that might make the pods capable of expelling a projectile.  Because Security Aviation never intended to use the pods to expel projectiles and never attempted to convert the pods so that they could expel projectiles, it is much more likely that Security Aviation did not know that the pods could be "readily converted to expel a projectile," an essential element of the crime. Security Aviation's intended use for the pods is therefore relevant evidence that is

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

OPPOSITION TO MOTION IN LIMINE OF THE UNITED STATES REGARDING RELEVANT DEFENSES

UNITED STATES OF AMERICA V. ROBERT F. KANE and SECURITY AVIATION

Page 4 of 16                                                                                          Case No 3:06-CR-00022-JWS-JDR-2

admissible under Fed R. Evid. 401.  *See* Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.")  Security Aviation's intended use for the pods as decoration for the L39 aircraft makes it much more probable that Security Aviation did not know that the pods could be readily converted to expel a projectile.  It is much less likely that someone would possess a device for a purpose completely independent of the device's ability to expel a projectile and yet also know that the device could expel or be readily converted to expel a projectile than if the individual's intended purpose for the device was to expel projectiles.  Given Security Aviation's benign and peaceful purpose for the pods, it is also much less likely that any employee or agent of Security Aviation would take the time to gain the knowledge of how to convert the pods so that they could expel a projectile.  There would be no reason for any employee or agent to take the time to gain such knowledge in light of the company's intended use for the pods.  To preclude the jury from hearing such relevant and exculpatory testimony would constitute reversible error. *United States. v. Vallejo*, 237 F.3d 1008, 1024 (9th Cir. 2001) (district court's exclusion of exculpatory testimony that someone other than the defendant committed charged crime as irrelevant was reversible error).

      The government's position is also internally inconsistent with the evidence it wishes to introduce.  In its trial brief, the government states that it intends to admit into evidence the alleged statement by Defendant Robert Kane ("Kane") regarding the intended use of the pods.  The government advises "at least one witness will testify that

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

OPPOSITION TO MOTION IN LIMINE OF THE UNITED STATES REGARDING RELEVANT DEFENSES

UNITED STATES OF AMERICA V. ROBERT F. KANE and SECURITY AVIATION

Page 5 of 16                                    Case No 3:06-CR-00022-JWS-JDR-2

Kane made various statements with regard to [the pods] use, including the phrase 'now we can go do some serious target practice.'"[3]  The government plans to introduce evidence of intended use that is favorable to its case, but asks this Court to stop the defense from doing the same.  This inconsistency highlights the relevance of the defendants' intended use to the defendant's knowledge.  Given the government's inconsistency, its request should be perfunctorily denied.  Obviously, the government cannot cherry pick relevant evidence.

*United States v. Dalpiaz*, 527 F.2d 548 (6th Cir. 1975), cited by the government, does not support exclusion of evidence.  First, *Dalpiaz* was decided 13 years before *Staples,* and the *Dalpiaz* court did not even address a *mens rea* requirement.  Second, the Sixth Circuit in *Dalpiaz* simply ruled that the defendant's subjective intended use for the device had no bearing on the issue of whether the device fell under the statutory exception that a device that is "neither designed nor redesigned for use as a weapon" is not a destructive device.  *Dalpiaz* has no bearing on whether a defendant's intended use for device is relevant to the defendant's knowledge of the features of the device that bring it within the National Firearms Act.

It is simply common sense, that an individual who intends to use a device to expel a projectile is much more likely to know that the device could or be readily converted to

---

[3] Government's Trial memorandum at 4 (emphasis added).

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

OPPOSITION TO MOTION IN LIMINE OF THE UNITED STATES REGARDING RELEVANT DEFENSES

UNITED STATES OF AMERICA V. ROBERT F. KANE and SECURITY AVIATION

Page 6 of 16                                    Case No 3:06-CR-00022-JWS-JDR-2

expel a projectile. Likewise, Security Aviation's intended peaceful use is probative of its lack of knowledge that the pods could be readily converted to expel a projectile.

## III. Availability of Rockets

The government also seeks to preclude evidence of the availability of rockets for use with the rocket pods as irrelevant. The governments argument fails because the availability of rockets is directly relevant to whether the pods can be "readily converted." It is also relevant to the defendants' *mens rea*.

### A. Rockets Are a Unique Technology and Are Not Ammunition

The government's sole authority is a thirty year old case from the Fifth Circuit, *United States v. Melancon*, 462 F.2d 82 (5th Cir. 1972). Melancon was convicted under 26 U.S.C. § 5861(d) for possessing a Japanese Knee Mortar. The defendant argued on appeal that because there was no evidence that any projectile had been available for use with the Japanese Knee Mortar since the fall of Japan at the end of World War II, the mortar could not be a destructive device. The Fifth Circuit dismissed that argument, holding:

> It is true that Railey [the government witness] did not know of the existence of a projectile for use in the Japanese Knee Mortar, but the Japanese Knee Mortar was nevertheless a firearm (or destructive device) capable of being fired and was possessed by Melancon in an unregistered state. Within the plain words of the statute, the weapon was there. A lack of appropriate ammunition could not and did not render the weapon non-existent.

*Melancon*, 462 F.2d at 96.

A Japanese Knee Mortar uses an entirely different firing technology from a rocket launcher. Because the two technologies are dissimilar, *Melancon* is of no help to the

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

OPPOSITION TO MOTION IN LIMINE OF THE UNITED STATES REGARDING RELEVANT DEFENSES

UNITED STATES OF AMERICA V. ROBERT F. KANE and SECURITY AVIATION

Page 7 of 16

Case No 3:06-CR-00022-JWS-JDR-2

government. The Japanese knee mortar, like all mortars, had a firing pin that expelled a projectile.[4] It was a complete weapon.

The pods seized by the government from the Palmer hangar, however, have no firing pin. Indeed, rockets cannot be expelled from any device by contact with a firing pin. Instead, rockets are expelled because the rocket's propellant is ignited. The pods seized from Security Aviation's hangar, however, are incapable of igniting a rocket. The pods have no firing device. They have no way of igniting a rocket's propellant. As addressed in Security Aviation's trial brief, the pods are not weapons. At most, they are components of a weapon. The pods are therefore completely distinguishable from the only reported case involving a destructive device that utilized rocket technology. In *United States v. Rushcamp*, 526 F.2d 1380 (6th 1975), the Sixth Circuit found that a German World War II bazooka was a destructive device. The Court distinguished the bazooka from a similarly-sized pipe, noting that the bazooka had "a trigger and a *firing device*, electrical circuitry, a blast shield, a sighting device, and a shoulder and hand rest." *Id.* at 1382 (emphasis added). A firing device is necessary, although not sufficient, for a device to be capable of expelling a rocket. Without a firing device that will actually ignite a rocket, the pods are incapable of expelling a projectile.

---

[4] See the internet websites explaining the technology of a Japanese Knee Mortar attached as Exhibit A.

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

OPPOSITION TO MOTION IN LIMINE OF THE UNITED STATES REGARDING RELEVANT DEFENSES

UNITED STATES OF AMERICA V. ROBERT F. KANE and SECURITY AVIATION

Page 8 of 16                                    Case No 3:06-CR-00022-JWS-JDR-2

With a proper understanding of the technology at issue, *Melancon*'s reference to the availability of "projectiles" and "ammunition" is of no relevance in this case. 18 U.S.C. § 921(a)(17(A) provides "[t]he term ammunition means ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm." This is the same statutory section that defines a "destructive device." That definition of "destructive device," includes include a "rocket having a propellant charge of more than four ounces." 18 U.S.C. § 921(a)(4)(A)(iii). A rocket is not ammunition, it is a destructive device. The propellant powder of a rocket might be ammunition, but the rocket itself is not ammunition. A rocket that contains its own igniter or firing device is even further a field from ammunition, as it contains the very mechanism necessary to fire it. The rockets that would operate with the pods are not ammunition or projectiles under *Melancon*. *Melancon* is, therefore of no relevance to this case.

**B.   The Availability of the Firing Device (Igniter) that the Government Maintains Accompanies the Rocket is Relevant to Whether the Pods Could Be Readily Converted.**

It appears to be the government's position that the pods' lack of a firing device is immaterial because the firing device or igniter comes with the rocket. The government's expert, Charles Watson, expressed such a view to defense counsel when he was made available to the defense. On May 9, 2006, the government also produced to the defense, two unidentified pictures of rockets. The pictures appear to show a rocket consisting of a projectile, propellant, and some sort of firing device or igniter. Because the pods contain no firing device and are therefore incapable of expelling any projectile by action of an explosion or propellant, the government's only hope is to prove that the pods could be

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

OPPOSITION TO MOTION IN LIMINE OF THE UNITED STATES REGARDING RELEVANT DEFENSES

UNITED STATES OF AMERICA V. ROBERT F. KANE and SECURITY AVIATION

Page 9 of 16                                                            Case No 3:06-CR-00022-JWS-JDR-2

readily converted to expel a projectile by the addition of a firing device.[5] If the government contends that the pods are readily convertible because the rockets themselves contain the firing device, then the availability of the rockets and the accompanying firing device (igniter) is relevant to whether the pods could be readily converted to expel a projectile. In order for the pods to be readily converted, the necessary parts have to be available. *See United States v. Aguilar-Espinosa* 57 F. Supp. 2d 1359, 1363 (M.D. Fla. 1999) (defining "readily restorable to shoot" as requiring that the necessary parts and tools for the restoration are available). If the firing device (included with the rocket) is not readily available, the pods cannot be "readily convertible."

In sum, in *Melancon* the projectile was not necessary for the Japanese Knee Mortar to be capable of expelling a projectile because the mortar contained a firing device, the firing pin. The mortar in *Melancon* was already capable of expelling a projectile. Here, the government obviously believes it can prove that the pods could be "readily" converted to expel a projectile because the rockets come with the necessary firing device.[6] The availability of the rockets and the accompanying firing device is therefore directly relevant to the pivotal issue the government must prove, whether the

---

[5] The pods also lack a trigger. Even if the pods had a firing device, there is no way the pods could trigger that firing device.

[6] It is, of course, Security Aviation's position, as expressed in its trial brief, that the lack of a trigger and a firing device means the pods are not weapons under the statute.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

OPPOSITION TO MOTION IN LIMINE OF THE
UNITED STATES REGARDING RELEVANT
DEFENSES

UNITED STATES OF AMERICA V.
ROBERT F. KANE and SECURITY AVIATION

Page 10 of 16                                Case No 3:06-CR-00022-JWS-JDR-2

pods could be "readily converted" to expel a projectile. If the rockets are unavailable, so too is a part necessary to convert the pods to expel a projectile.

### C. The Availability of Rockets is Relevant to the Defendant's Knowledge

In addition, *Melancon* is a pre *Staples* case. The availability of rockets is also relevant to Defendant Security Aviation's knowledge that the pods could be readily converted to expel a projectile. The relevance is two fold. First, if the rockets do contain the igniter, then the unavailability of the rockets makes it more likely than not that Security Aviation was completely unaware of how the pods could be converted. Because the rockets and their firing devices are unavailable, it is much more likely that Security Aviation was completely unaware that a firing device for the pods even existed, let alone was obtainable.

Second, the unavailability of rockets makes it more likely that Security Aviation had no intention to use the pods to expel a projectile. Why would Security Aviation purchase pods to expel a projectile if it was impossible to obtain the projectile? As discussed above, Security Aviation's intended use is directly relevant to its knowledge of the features of the pods. Because the unavailability of rockets is probative of that intent, the unavailability of rockets is also probative of Security Aviation's *mens rea*.

To exclude such exculpatory relevant testimony would constitute reversible error. *See Vallejo*, 237 F.3d at 1024.

### IV. The Age, Variant, or Model of the Pods

The government's position that the age, variant, or model of the pods is not relevant is difficult to comprehend. Evidence regarding these topics is clearly relevant to

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

OPPOSITION TO MOTION IN LIMINE OF THE UNITED STATES REGARDING RELEVANT DEFENSES

UNITED STATES OF AMERICA V. ROBERT F. KANE and SECURITY AVIATION

Page 11 of 16                                                                 Case No 3:06-CR-00022-JWS-JDR-2

whether the pods qualify as destructive devices and whether Security Aviation possessed the requisite *mens rea*.

### A. Age

The age of the pods is relevant to their ability to expel a projectile. The older a device is the less likely it is to function.[7] The government has not indicated that any expert or government agent will testify that it readily converted the pods and actually fired a projectile from the pod. *C. f. Rushcamp*, 526 F.2d at 1381 (government agent test fired three rockets from the subject bazooka). Instead, the government is going to ask the jury to find that the pods could expel a projectile on the basis of witnesses' testimony. The age of the pods is directly relevant to the pods capability to expel a projectile or be readily converted to do so. The older the pods are, the less likely it is that the pods could be readily converted to expel a projectile.

The age of the pods is also relevant to Security Aviation's knowledge. Because the pods are old or vintage, it is more likely that Security Aviation did not know that the pods could be readily converted to expel a projectile. Security Aviation's knowledge of the old age of the pods makes it more likely that Security Aviation believed that the pods were incapable of expelling a projectile and could not be readily converted to do so.

---

[7] This is simple common sense. A car older than 20 years is a rarity for this very reason.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

OPPOSITION TO MOTION IN LIMINE OF THE
UNITED STATES REGARDING RELEVANT
DEFENSES

UNITED STATES OF AMERICA V.
ROBERT F. KANE and SECURITY AVIATION

Page 12 of 16                                    Case No 3:06-CR-00022-JWS-JDR-2

### B. Variant or Model

The government must prove that the pods could expel a projectile or be readily converted to do so, but it still boldly asks this court for an order excluding the variant or model of the pods. The government's request is difficult to comprehend. The variant or model of the pods is obviously necessary to understand the technology of the subject pods. The jury will not be able to understand how the pods work unless it understands which model or variant the pods are. The government cannot seriously maintain that it will present its case, call the pods destructive devices, and that the defense should be precluded from explaining the details of the technology of the devices at issue. One of the defense's proposed expert witnesses is an expert on the weapon systems of L-39 aircraft. He will testify that the version of the pods at issue was an older technology that is inoperable without certain necessary parts, which Security Aviation did not possess and are not available. He will also testify how a newer version's different technology erased the need for those parts. The variant and model of the pods at issue is, therefore, directly relevant to one of the critical issues in this case, whether the pods could be readily converted to expel a projectile.

### V. The Evidence is Relevant

The government casts aspersions regarding jury nullification in its trial brief. For the reasons stated above, nullification is a red herring. All the testimony and evidence the government seeks to exclude from the jury is directly relevant to the charges at issue. The evidence is unquestionably relevant and must come in. The government cannot exclude such evidence with vague references to nullification and arguments based on

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

OPPOSITION TO MOTION IN LIMINE OF THE
UNITED STATES REGARDING RELEVANT
DEFENSES

UNITED STATES OF AMERICA V.
ROBERT F. KANE and SECURITY AVIATION

Page 13 of 16                               Case No 3:06-CR-00022-JWS-JDR-2

incorrect statements of the appropriate legal standard. It is not surprising that the government wishes to exclude exculpatory relevant testimony, but that is not how the federal rules of evidence work. The jury must hear relevant testimony.

## VI.  Limiting Instruction Regarding the L-39 Aircraft

The government's request for an instruction limiting the jury use of the evidence of the L-39 aircraft's ability to operate the pods to the defendants' knowledge is not well taken. The evidence at trial will clearly show that the pods lack any sort of trigger or triggering device. Therefore, even if a firing device were somehow obtained, the pods lack a mechanism to trigger the device.

The evidence will also show that the pods are designed for an aircraft to act as a triggering mechanism. The evidence will also show that none of the L-39 aircraft within the control of Security Aviation were capable of sending a triggering signal to the pods. The aircraft's inability to operate the pods is therefore directly relevant to whether the pods could be readily converted to expel a projectile. Even if a firing device was obtained, the pods could not be fired with the aircraft that was readily available to Security Aviation. The ability of the aircraft to operate or trigger the pods is directly relevant to whether the pods could be readily converted to expel a projectile *C.f. Rushcamp*, 536 F.2d at 1382 (noting that the bazooka had a trigger.)

The government also cryptically states that it does not bear the burden of showing that the pods were not demilitarized or that the pods could have been or actually were attached to the aircraft. The import of this statement is unclear. The government must prove that the pods could be readily converted to expel a projectile. If the pods could not

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

OPPOSITION TO MOTION IN LIMINE OF THE
UNITED STATES REGARDING RELEVANT
DEFENSES

UNITED STATES OF AMERICA V.
ROBERT F. KANE and SECURITY AVIATION

Page 14 of 16                                           Case No 3:06-CR-00022-JWS-JDR-2

be readily converted because they have been demilitarized or because the available aircraft were incapable of sending the necessary triggering signal, that evidence is certainly pertinent to the critical issue in the case.

## VII. Conclusion

For the reasons above, the government's motion in limine requesting excluding of evidence and a limiting jury instruction must be denied.

DATED this 11th day of May, 2006, at Anchorage, Alaska.

DORSEY & WHITNEY LLP

By: /s/ Allen F. Clendaniel
Robert C. Bundy, ABA #7206021
Allen F. Clendaniel, ABA #0411084
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Suite 600
Anchorage, AK 99501-5907
(907) 276-4557
bundy.robert@dorsey.com
clendaniel.allen@dorsey.com

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

OPPOSITION TO MOTION IN LIMINE OF THE UNITED STATES REGARDING RELEVANT DEFENSES

UNITED STATES OF AMERICA V. ROBERT F. KANE and SECURITY AVIATION

Page 15 of 16

Case No 3:06-CR-00022-JWS-JDR-2

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 11th day of May, 2006, a true and correct copy of this document was served on:

| | |
|---|---|
| James N. Barkeley | Paul D. Stockler |
| Steven Skrocki | 1309 W. 16th Avenue |
| Assistant United States Attorney | Anchorage, Alaska  99501 |
| Federal Building  U.S. Courthouse | |
| 222 W. 7th  Ave. #9, Rm 253 | |
| Anchorage, Alaska  99513-7567 | |
| | |
| Kevin Fitzgerald | James L. Kee |
| Ingaldson, Maassen & Fitzgerald | Kee, Archer & Herberger, P.A. |
| 813 West 3rd Avenue | 1102 Maple Street |
| Anchorage, Alaska  99501 | Duncan, Oklahoma  73533 |

by electronic means through the ECF system as indicated on the Notice of Electronic Filing, or if not confirmed by ECF, by first class regular mail.


 By:      /s/ Allen F. Clendaniel
          Robert C. Bundy, ABA #7206021
          Allen F. Clendaniel, ABA #0411084
          Dorsey & Whitney, LLP

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

OPPOSITION TO MOTION IN LIMINE OF THE UNITED STATES REGARDING RELEVANT DEFENSES

UNITED STATES OF AMERICA V. ROBERT F. KANE and SECURITY AVIATION

Page 16 of 16

Case No 3:06-CR-00022-JWS-JDR-2

4836-1334-5281\1 5/11/2006 10:30 AM