IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

REGIONAL PROTECTIVE SERVICES, )
LLC and SECURITY AVIATION, INC., )
)
        Plaintiffs, )
v. )
)
AIR USA, INC., RED AIR, INC., )
ROBERT ANTHONY, JOHN BERENS, )
DONALD W. KIRLIN, MARK SHEETS, )
MICHAEL VALES and JOHN DOES I-IV.,)
)
        Defendants. )   Case No. 3AN-06-07694 CI [PJM]
_____)

## COMPLAINT

COME NOW plaintiffs REGIONAL PROTECTIVE SERVICES, LLC, and SECURITY AVIATION, INC., by and through counsel RICHMOND & QUINN, and complain and allege as follows:

1. Plaintiff Regional Protective Services, LLC (hereinafter "RPS") is, and has at all relevant times been, a limited liability company licensed to do business in the State of Alaska.

2. Plaintiff Security Aviation, Inc. (hereinafter "Security Aviation") is an Alaskan corporation doing business in the State of Alaska.

3. Defendant, Air USA, Inc. (hereinafter "Air USA"), is a Nevada corporation doing business in the State of Alaska.

4. Defendant, Red Air, Inc. (hereinafter "Red Air") is an Illinois corporation doing business in the State of Alaska.

EXHIBIT A
Page 1 of 15

5. Defendant Robert Anthony (hereinafter "Anthony"), is a former employee of Security Aviation, and is a citizen of the state of Alaska.

6. Defendant John Berens (hereinafter "Berens") is a former employee of Security Aviation and, upon information and belief, is a citizen of state of Iowa.

7. Defendant Mark Sheets (hereinafter "Sheets") is a former employee of Security Aviation and is a citizen of the state of Alaska.

8. Defendant Michael Vales (hereinafter "Vales") is an employee and agent of Air USA and, upon information and belief, is a citizen of the state of Illinois.

9. Defendant Donald W. Kirlin (hereinafter "Kirlin") is president of Air USA and Red Air and is a citizen of the state of Illinois.

10. The events that form the basis for this cause of action occurred in the Third Judicial District of the State of Alaska.

11. In August 2005, RPS and Air USA signed purchase agreements for the sale of eight (8) Aero Vodohody L-39/L-59 aircraft. Four of the contracts were for the purchase of L-39C aircraft (C model aircraft), and four of the contracts were for the purchase of Aero L-59 aircraft.

12. RPS and Air USA signed purchase agreements on August 8, 2005, August 18, 2005 and August 29, 2005 for the C model aircraft. RPS paid the full purchase price for each of the four L-39C aircraft.

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

EXHIBIT _A_
Page _2_ of _15_

13. After receiving the L-39C aircraft, RPS learned that the L-39C aircraft it purchased were not in compliance with the contracts and had a number of serious problems affecting airworthiness.

14. Kirlin met with representatives of RPS regarding these discrepancies and promised and agreed that he and Air USA would be responsible for and address the major discrepancies.

15. The L-39C aircraft had additional discrepancies that needed to be repaired to make them airworthy.

16. To date, Air USA and Kirlin have not addressed and/or paid for the repair of the discrepancies brought to their attention by RPS.

17. RPS and Air USA signed purchase agreements on August 9, 2005 for the sale of four (4) L-39MS/L-59 aircraft (Tail Numbers N102XX, N104XX, N105XX, and N106XX). The purchase price on each aircraft was $800,000.00. Although these aircraft had been represented to RPS to be L-59 aircraft, in fact they were L-39MS aircraft.

18. On August 10, 2005, RPS wired $1,305,000.00 to Air USA and Kirlin towards the purchase price of the L-39MS aircraft. That sum included a $250,000.00 deposit on each of the MS model aircraft and an additional $305,000.00 in good faith towards an early completion of the sale.

19. On September 12, 2005, RPS transferred an additional $1,000,000.00 to Air USA and Kirlin to assure shipping and an early sale completion. In reliance on Kirlin's representations regarding the airworthiness of these aircraft and their condition, Security

EXHIBIT A
Page 3 of 15

COMPLAINT
Regional Protective Services, LLC & Security Aviation, Inc. v. Air USA, Inc. et al, 3AN-06-_____ Civil
Page 3 of 15

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

Aviation began actively pursuing government contracting opportunities and preparing proposals for the use of those aircraft.

20. The purchase agreements for the MS Model aircraft included the following special terms and conditions: "Aircraft to be delivered, assembled, and flying in Anchorage, AK." Delivery was also subject to the aircraft having an FAA certificate of airworthiness in the experimental exhibition category.

21. Further, the agreement provided that seller was to provide the aircraft's log books, flight manuals, maintenance manuals, and an FAA approved aircraft inspection manual. Some or all of these documents were never provided to RPS.

22. Under the agreement, final payment was not due until time of delivery.

23. Because the four L-39MS aircraft did not have the fuel capacity to fly to Alaska, Air USA and/or Red Air disassembled the aircraft, crated them, and shipped them to Alaska. The L-39MS aircraft arrived in Anchorage, Alaska in December 2005 in poor condition. Michael Vales, an employee with Air USA and/or Red Air, began assembling the aircraft in Security Aviation's hangar in Palmer, Alaska without the use of manuals and without completing the documentation necessary for the aircraft to be airworthy.

24. In early December 2005, Kirlin was in Alaska to discuss RPS's concerns regarding the C model aircraft. While he was in Alaska, Kirlin took the FAA Air Worthiness Certificates relating to all four MS model aircraft.

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

EXHIBIT A
Page 4 of 15

COMPLAINT
Regional Protective Services, LLC & Security Aviation, Inc. v. Air USA, Inc. et al, 3AN-06-_____ Civil
Page 4 of 15

25. Air USA and/or Red Air and Michael Vales completed the assembly of the aircraft in December 2005 but never tested the aircrafts' systems or flew them and never placed the aircraft into an airworthy condition.

26. RPS voiced concern to Michael Vales about the MS models. RPS was particularly concerned that the planes were assembled without the use of assembly manuals or instructions. Even after the aircraft were assembled, the aircraft were not airworthy or capable of being flown legally without further action being taken. Thus, the aircraft were neither flying nor capable of flight.

27. On or about January 9, 2005, Kirlin called Mark Avery (hereinafter "Avery"), President of RPS, asking about payment on the MS models. Avery explained to Kirlin that RPS had serious concerns about the MS models. He told Kirlin that he would get back to Kirlin with a detailed list of concerns.

28. Air USA and/or Red Air never tendered the aircraft for delivery, nor did Air USA and/or Red Air or Kirlin ever state in writing that delivery had been completed or demand the outstanding balance of the payments. Although there was an "Affidavit and Acknowledgement of Delivery" attached to the Purchase Agreement, Air USA, Red Air, and Kirlin never tendered the affidavit of delivery to RPS, nor requested that RPS execute the affidavit.

29. Because the aircraft did not meet the terms and requirements of the Purchase Agreement, Air USA and/or Red Air and Kirlin never tendered the aircraft to RPS under

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

EXHIBIT A
Page 5 of 15

the sales agreement or delivered aircraft in conformance with the contracts, and RPS never accepted delivery of the aircraft.

30. On or around January 21, 2006, Air USA and/or Red Air, Berens, Sheets, Vales, and Kirlin, without right and without informing RPS of their intentions, took possession of the 4 MS-39C aircraft.

31. RPS contacted the Palmer police, who declined to take action against Air USA and/or Red Air and Kirlin.

32. Ray Sleeth and Craig Wolter of Security Aviation went to the hangar, where Kirlin, Berens, Sheets, Vales, and other agents of Air USA and/or Red Air were keeping the aircraft. Mr. Stephen Freeman, an agent of Air USA, identified himself as law enforcement, flashed his badge, and ordered Mr. Sleeth and Mr. Wolter to leave.

33. Air USA and/or Red Air, Berens, Sheets, and Kirlin induced a Security Aviation mechanic—Anthony—to provide them with a key to the Security Aviation hangar for improper purposes. Anthony knew he did not have authority to provide Air USA and Red Air, Berens, Sheets, and Kirlin access to the hangar, and they similarly knew that Anthony did not have authority to provide such access.

34. Air USA and/or Red Air, Berens, Sheets, and Kirlin used that key to enter Security Aviation's hangar on Saturday evening, January 21, 2006, when the hangar was closed, and take drop tanks, batteries, and other equipment belonging to RPS and/or Security Aviation, some of which was independently purchased by RPS and was never part of the L-39MS aircraft sale.

EXHIBIT A
Page 6 of 15

COMPLAINT
Regional Protective Services, LLC & Security Aviation, Inc. v. Air USA, Inc. et al, 3AN-06-_____ Civil
Page 6 of 15

35.  Mark Avery, owner of RPS, told Kirlin in front of Lt. Remaley of the Palmer Police Department that the L39MS aircraft were not airworthy and should not be taken from the Palmer Airport. Mark Avery demanded the return of his 2.3 million dollar deposit, and Kirlin refused. The following day, despite Mark Avery's warnings, two of Air USA and/or Red Air's agents flew two of the MS model aircraft from Palmer to Sitka.

36.  RPS contacted the FAA to alert the FAA that the aircraft had left Palmer and that the aircraft were not airworthy.

37.  On January 25, 2006, MS Model Aircraft N104XX, piloted by Stephen Freeman, crashed in Ketchikan, Alaska, killing Mr. Freeman and destroying the aircraft.

## FIRST CAUSE OF ACTION — TRESPASS

38.  Plaintiffs incorporate by reference the facts asserted in paragraphs 1 through 37 of this complaint.

39.  At the time Air USA and/or Red Air, Berens, Sheets, Vales, and Kirlin entered the Security Aviation hangar, they knew that the hangar was owned by Security Aviation and being used by RPS, and contained property owned and in the possession of RPS and Security Aviation. They also knew that they did not have the right to enter the hangar, which entry was for the purpose of taking RPS's property.

40.  Air USA and/or Red Air, Berens, Sheets, Vales, and Kirlin knew that Anthony did not have authority to allow entry into the hangar.

41.  Air USA's and/or Red Air's, Berens', Sheets', Vales', and Kirlin's entry onto Security Aviation's property was wrongful and constituted a trespass.

EXHIBIT _A_
Page _7_ of _15_

COMPLAINT
Regional Protective Services, LLC & Security Aviation, Inc. v. Air USA, Inc. et al, 3AN-06-_____ Civil
Page 7 of 15

42. That entry was a legal cause of RPS's and Security Aviation's damages.

## COUNT II
## INTENTIONAL INTERFERENCE WITH CHATTELS/CONVERSION

43. Plaintiffs incorporate by reference the facts asserted in paragraphs 1 through 42 of this complaint.

44. Air USA's and/or Red Air's, Berens', Sheets', Vales', and Kirlin's taking of the four 39MS aircraft wrongfully interfered with RPS's possessory and other interests in the aircraft.

45. Similarly, their taking of the drop tanks, batteries. and other equipment from the hangar interfered with RPS's and/or Security Aviation's possessory, ownership, and other interests in that property.

46. Air USA and/or Red Air and Kirlin destroyed at least one of the planes, drop tanks, and batteries when the aircraft subsequently crashed in Ketchikan, and wrongfully interfered with the RPS's and/or Security Aviation's right to possess the remaining planes, drop tanks, batteries and equipment.

47. Air USA's and/or Red Air's and Kirlin's acts of interference, set forth above, were wrongful and intentional.

48. Those acts were the legal cause of RPS's losses.

## COUNT III — MISREPRESENTATION

49. RPS incorporates by reference the facts asserted in paragraphs 1 through 48 of this complaint.

EXHIBIT A
Page 8 of 15

50. Air USA and/or Red Air and Kirlin and their agents made false and misleading representations about all eight of the aircraft.

51. These false and misleading representations were susceptible of knowledge at the time they were made.

52. These statements were material.

53. RPS relied on Air USA's and/or Red Air's and Kirlin's false and misleading statements.

54. RPS's reliance was justifiable.

55. RPS has been damaged as a result of its reliance on defendants' false and misleading representations.

### COUNT IV — NONDISCLOSURE

56. Plaintiffs incorporate by reference the facts asserted in paragraphs 1 through 55 of this complaint.

57. Air USA and/or Red Air and Kirlin failed to disclose information about all eight aircraft.

58. Air USA and/or Red Air and Kirlin had a duty to disclose this information.

59. At time of the transactions, the non-disclosed information was susceptible of knowledge.

60. The non-disclosed information was material.

61. RPS relied on this nondisclosure.

62. RPS's reliance was justifiable.

EXHIBIT __A__
Page __9__ of __15__

COMPLAINT
Regional Protective Services, LLC & Security Aviation, Inc. v. Air USA, Inc. et al, 3AN-06-_____ Civil
Page 9 of 15

63. RPS suffered damages as a result of that reliance.

64. Air USA and/or Red Air and Kirlin knew or should have known that RPS would rely on these nondisclosures.

## COUNT V — BREACH OF CONTRACT

65. Plaintiffs incorporate by reference the facts asserted in paragraphs 1 through 64 of this complaint.

66. Air USA and/or Red Air and Kirlin entered into eight separate contracts with RPS for the sale and purchase of eight aircraft.

67. Air USA and/or Red Air and Kirlin breached the terms of the contracts by failing to deliver the L-39C aircraft in the condition promised and represented, and the aircraft failed to meet the terms of the purchase agreements.

68. With respect to the four L-39MS aircraft, Air USA and/or Red Air and Kirlin breached the contract by failing to tender delivery of the aircraft in conformity with the requirements of the purchase agreements. The aircraft were never made airworthy, they were never flown in Anchorage, Alaska, and proper documentation was not delivered. Air USA and/or Red Air and Kirlin further breached the contract by taking possession of the aircraft.

69. RPS has been damages as a result of defendants' breaches, in an amount to be proven at trial.

## COUNT VI — CANCEL OF PURCHASE/RETURN OF FUNDS

EXHIBIT A
Page 10 of 15

COMPLAINT
Regional Protective Services, LLC & Security Aviation, Inc. v. Air USA, Inc. et al, 3AN-06-_____ Civil
Page 10 of 15

70. Plaintiffs incorporate by reference the facts asserted in paragraphs 1 through 69 of this complaint.

71. The purchase agreements for the L-39MS aircraft provide that if Air USA does not deliver or is unable to deliver the aircraft, either party may cancel the purchase with full refund of payments made.

72. RPS, by letter of February 22, 2006, demanded return of the payments made on the L-39MS aircraft for the reason the aircraft were never delivered. Air USA and/or Red Air and Kirlin have wrongfully withheld and not returned funds they have received from RPS.

73. RPS has been damaged by defendants' failure to return funds that RPS forwarded to Air USA regarding the aircraft, in an amount of $2,305,000, plus incidental and consequential damages in an amount to be proven at trial.

### COUNT VII — UNJUST ENRICHMENT/RESTITUTION

74. Plaintiffs incorporate by reference the facts asserted in paragraphs 1 through 73 of this complaint.

75. Air USA and/or Red Air and Kirlin have been unjustly enriched by retention of funds paid them by RPS for the four L-39MS aircraft.

76. Defendants should be required to return the $2,305,000 received from RPS.

### COUNT VIII
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

77. Plaintiffs incorporate by reference the facts asserted in paragraphs 1 through 76 of this complaint.

EXHIBIT __A__
Page __11__ of __15__

COMPLAINT
Regional Protective Services, LLC & Security Aviation, Inc. v. Air USA, Inc. et al, 3AN-06-_____ Civil
Page 11 of 15

78. Air USA and/or Red Air and Kirlin intentionally deprived RPS of the benefit of the MS model aircraft contracts by failing to deliver them in an airworthy condition and by wrongfully taking them from the premises of Security Aviation.

79. Air USA and/or Red Air and Kirlin acted in a manner that a reasonable person would regard as unfair with regard to the C model aircraft contracts by failing to address the major discrepancies identified by RPS and Security Aviation to defendant Kirlin.

80. RPS has been damaged as a result, the exact amount to be proven at trial.

### COUNT IX — CLAIMS AGAINST ROBERT ANTHONY

81. Plaintiffs incorporate by reference the facts asserted in paragraphs 1 through 80 of this complaint.

82. Robert Anthony wrongfully provided Air USA and/or Red Air, Berens, Sheets, Vales, and Kirlin access to Security Aviation's hangar and to RPS's property.

83. Defendant Robert Anthony assisted Air USA and/or Red Air's, Berens', Sheets', Vales', and Kirlin's wrongful taking of property belonging to RPS and in which RPS had a possessory interest.

84. Defendant Robert Anthony conspired with Air USA and/or Red Air, Berens, Sheets, Vales, and Kirlin in committing the wrongful acts set forth above.

85. Robert Anthony breached the duties he owed his employer, Security Aviation, and to RPS.

EXHIBIT A
Page 12 of 15

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

COMPLAINT
Regional Protective Services, LLC & Security Aviation, Inc. v. Air USA, Inc. et al, 3AN-06-_____ Civil
Page 12 of 15

86. RPS and Security Aviation were damaged by Anthony's actions, in an amount to be proven at trial.

## COUNT X — CLAIMS AGAINST ALL DEFENDANTS: CONSPIRACY

87. Plaintiffs incorporate by reference the facts asserted in paragraphs 1 through 86 of this complaint.

88. Robert Anthony wrongfully provided Air USA and/or Red Air, Berens, Sheets, Vales, and Kirlin access to Security Aviation's hangar and to RPS's property.

89. Defendant Robert Anthony assisted Air USA and/or Red Air's, Berens', Sheets', Vales', and Kirlin's wrongful taking of property belonging to RPS and in which RPS had a possessory interest.

90. Defendants conspired together in committing the wrongful acts set forth above in this complaint.

91. RPS and Security Aviation were damaged by defendants' actions, in an amount to be proven at trial.

## LOSSES AND DAMAGES

92. Plaintiffs incorporate by reference the facts asserted in paragraphs 1 through 91 of this complaint.

93. Air USA's and/or Red Air's, Berens', Sheets', Vales', and Kirlin's intentional, negligent, and reckless acts, as described in paragraphs 1 through 90 above, directly and proximately caused RPS to suffer damages, including but not limited to:

EXHIBIT A
Page 13 of 15

- $2,305,000 in funds advanced relating to the purchase of the L-39MS aircraft.
- Funds expended to bring the L-39C aircraft into the airworthy condition required by the purchase agreements, in an amount to be determined at trial.
- Damages related to Air USA's and/or Red Air's and Kirlin's failure to deliver L-39C aircraft in conformity with the requirements of purchase agreements and representations, and Air USA's and/or Red Air's and Kirlin's refusal to fix discrepancies with the L-39C aircraft, in an amount to be determined at trial.
- $3,200,000 for the wrongful taking of the L-39MS aircraft.
- Damages for property wrongfully taken from RPS's hangar, in an amount to be proven at trial.
- Incidental and consequential damages, in an amount to be proven at trial.
- RPS also requests an award of punitive damages against all defendants, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully pray that this court enter a judgment providing for relief as follows:

1. That plaintiffs be awarded general, special, incidental, consequential, and other compensatory damages from the defendants;

2. That plaintiffs be awarded punitive damages against Air USA and/or Red Air, Berens, Sheets, Vales, Anthony, and Kirlin; and

EXHIBIT A
Page 14 of 15

COMPLAINT
Regional Protective Services, LLC & Security Aviation, Inc. v. Air USA, Inc. et al, 3AN-06-_____ Civil
Page 14 of 15

3. That plaintiffs be awarded attorney fees, prejudgment interest, post-judgment interest, and costs.

DATED at Anchorage, Alaska this _____4th_____ day of May 2006.

RICHMOND & QUINN
Attorneys for Plaintiffs
REGIONAL PROTECTIVE SERVICES
and SECURITY AVIATION, INC.

By: _____
Robert L. Richmond
Alaska Bar No. 7011069

2234.002\Pld\COMPLAINT

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

EXHIBIT A
Page 15 of 15

COMPLAINT
Regional Protective Services, LLC & Security Aviation, Inc. v. Air USA, Inc. et al, 3AN-06-_____ Civil
Page 15 of 15